[Crim. No. 7758. First Dist., Div. Two. Dec. 19, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES W. EVANS, Defendant and Appellant.

**COUNSEL**

Scott Elder, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and James A. Aiello, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—Defendant appeals from a judgment entered on a jury verdict finding him guilty of possession of a sharp instrument by a state prison inmate (Pen. Code, § 4502) and from the order denying his motion for a new trial.[1] He contends that the trial court committed prejudicial error by refusing to give his proffered instructions, indicating that he had obtained possession of the weapon under such threat and fear for his life that he could not have possession "knowingly" as required by the statute, and by excluding evidence of threats made against his life.

As there are no contentions concerning the sufficiency of the evidence, a summary of the pertinent facts, viewed most favorably to the judgment, will suffice. On January 20, 1968, defendant was an inmate at the California Medical Facility at Vacaville. On that date, Ray Lee Howard, a recently arrived black inmate of the institution, had a conversation with defendant about defendant's argument with another black inmate, one Jesse Hicks (hereafter Hicks), and was shown a knife by defendant. On the morning of January 24, 1968, sometime before 6 a.m., when Hicks and Daniel Mason, another black inmate, were having breakfast in the dining hall, defendant entered, walked up to their table, and told them to stop staring at him. Hicks told defendant to leave.

Defendant did so and Mason and Hicks proceeded to their work assignment in the laundry. Defendant, who was also assigned to work in the laundry, was already there when Hicks and Mason arrived. They asked defendant about the outbreak at breakfast, and one of them said: "Better check yourself. You don't know who you are talking to." During the ensuing altercation, defendant came up with a knife and made a rush at Mason. Mason avoided the fight. Defendant and Hicks engaged in a running battle through the laundry. Hicks was stabbed several times after having been chased by defendant. Thereafter, Mason ran from the laundry room to the kitchen, pursued by defendant. Mason hid in the kitchen behind the bread boxes and defendant came in with the knife. The civilian supervisor of the laundry at Vacaville witnessed the altercation, saw the knife in defendant's hand, the swipes at Hicks, and the pursuit of Mason.

As defendant ran down the hall with the knife in his hand, several correctional officers appeared on the scene and followed him. He was finally stopped when the officers encircled him and seized his arms from behind.

---

[1]Since the 1961 amendment of Penal Code section 1237, there has been no separate appeal from an order denying a motion for a new trial. Accordingly, that appeal must be dismissed as an appeal from an unappealable order (*People v. Jeter,* 60 Cal.2d 671 [36 Cal.Rptr. 323, 388 P.2d 355]).

Defendant dropped the knife, saying: "I will go now, I will be all right." Subsequently, defendant was taken to the custody office and searched. A scabbard was found in one of his rear trousers pockets. The scabbard, like the knife dropped by defendant, had a star and crescent insignia, the symbol of the Black Muslim organization that existed at the facility.

Defendant testified that Hicks, Mason and Howard had been threatening him for sometime before January 24. During the fight in the laundry room, a knife in a scabbard was thrown onto the floor by someone in a group of black inmates. Both defendant and Hicks dove for the scabbard and defendant came up with it and the knife. This aspect of defendant's testimony was corroborated by his witnesses, Mark Cox, Ivor Steepen and Dwight Abbott.

Defendant admitted that after Hicks was out of the way, he pursued Mason out of the laundry room and down the hall with the knife in his hand and that sometime before the particular incident, he had challenged Hicks and Mason to fight. At breakfast on the morning of the fight, defendant told Hicks and Mason not to stare at him any more and when they told him to get away from the table, he again asked them if they wanted to fight.

The cross-examination of defense witness Abbott was to resume the afternoon of the same day defendant testified but, during the noon break, defendant, Cox and another inmate severely beat Abbott. Accordingly, the following morning, the court and the jury convened for a special hearing at the medical facility. Abbott testified from a stretcher that he had requested an interview with the district attorney the afternoon of the previous day because the testimony that he had given the previous morning on direct examination concerning the knife tossed into the fight by a group of black inmates was a lie told under threat of physical harm. The truth was that defendant had the knife when the fight started and had brought it into the laundry room in his shoe. Abbott also recanted his earlier testimony that he did not see defendant stab Hicks, and stated that, in fact, he saw defendant stab Hicks during the fight in the laundry. When the trial reconvened in the courtroom, defendant retook the stand and stated that Abbott's testimony from the stretcher was a lie; that Abbott's direct testimony was the truth; that defendant had no idea why or how Abbott had been beaten.

Defendant first complains of the trial court's failure to instruct the jury that he obtained possession of the weapon under such threat and fear for his life that he could not have possession *knowingly,* as required by Penal Code section 4502. We note that at the trial, defendant couched his argument in terms of self-defense and framed some requested jury instructions in those terms. However, his closing brief on appeal concedes that in the context of the particular fact situation, the law of self-defense is not applicable and

argues only on the basis of the instructions, quoted below,[2] relating to compulsion and coercion.

Defendant here was charged with a violation of Penal Code section 4502, which provides, so far as pertinent: "Every person confined in a state prison [who] . . . possesses or carries upon his person [a] . . . sharp instrument" is guilty of a criminal offense. Proof of knowing possession of such an instrument by a state prison inmate is sufficient for conviction. ■ Under the general rule, the prosecution is not required to prove the intent or purpose for which the instrument is so possessed (2 Witkin, Cal. Crimes (1963) p. 730; *People* v. *Wells,* 68 Cal.App.2d 476, 482 [156 P.2d 979]; *People* v. *Marcus,* 133 Cal.App.2d 579, 581 [284 P.2d 848]). ■ Section 4502 of the Penal Code serves an objective demanding relative inflexibility. Its objective is protection of inmates and prison officials against assaults by armed prisoners. It is one of the stringent statutes governing prison safety. Thus, a group of California decisions place section 4502 among the statutes whose violation does not depend upon proof of guilty intent, holding that its prohibition is absolute (*People* v. *Wells,* 261 Cal.App.2d 468, 478-479 [68 Cal.Rptr. 400]; hearing denied by Supreme Court).

As we recently observed in *People* v. *Steely,* 266 Cal.App.2d 591 at page 595 [72 Cal.Rptr. 368], where an argument similar to defendant's in the instant case was raised in relation to Penal Code section 4502: "*Wells, supra,* notes that some cases, although accepting strict liability as the general rule, 'suggest by dicta the possibility of two extremely narrow exceptions: one, that the accused was in immediate danger when he armed himself and without opportunity to seek the protection of prison authorities, or second, that his possession was authorized for the performance of prison duties such as kitchen or shop work.' "

Defendant, in his opening brief, argues that under his version of the facts, he fell within the first of the two exceptions to the general rule noted above,

---

[2]"To constitute the offense charged against the defendant in the information, the possession of the sharp instrument knowingly by him, as charged, is sufficient, and if the defendant knowingly had such possession, his intent or purpose, if any, in respect thereto is immaterial, except that his possession of the instrument is not an offense, but is justifiable and excused, if the defendant while confronted with an emergency seized the instrument in necessary self-defense, believing as a reasonable man that it was necessary to do so to protect himself against a present, active, and immediate danger of great bodily harm."

"If the defendant, while confronted with an emergency, seized the instrument in necessary self-defense, believing as a reasonable man that it was necessary to do so to protect himself against a present, active and immediate danger of great bodily harm, defendant did not 'possess' the instrument within the meaning of P.C. Sec. 4502 while holding it in his hand under the stated circumstances and for the stated purpose."

namely, that he was in immediate danger when he armed himself and was without opportunity to seek the protection of the prison authorities when the altercation began in the laundry. However, his closing brief abandons this argument and relies on a general defense. He cites Penal Code section 26, subdivision 8, providing that persons who commit a criminal act under threat or menace sufficient to show that they had reasonable cause to believe that their lives would be endangered are not capable of committing crimes.

■ We note that even assuming, without conceding, that the first *Wells* exception was properly applicable here at the time defendant picked up the knife, any right to self-defense ceased when defendant chased Mason with the knife. ■ A defendant who is an aggressor has no right to stand his ground but must retreat (*People* v. *Duchon,* 165 Cal.App.2d 690, 693 [332 P.2d 373]). Once the danger is past, he cannot persist and use force (*People* v. *Keys,* 62 Cal.App.2d 903, 916 [145 P.2d 589]). ■ Here, any danger was past as soon as defendant emerged from the laundry room. The testimony is uncontradicted that he did not seek the protection of the correctional officers at that time or surrender the knife but instead continued to pursue Mason, who was unarmed.

■ As to the attempted defense under Penal Code section 26, a similar rationale applies. For duress produced by menace to be a valid excuse, there must be a reasonable cause to believe and an actual belief that life is in danger and the danger must be one of present and immediate violence at the time of the commission of the forbidden act (*People* v. *Villegas,* 29 Cal. App.2d 658 [85 P.2d 480]; *People* v. *Sanders,* 82 Cal.App. 778 [256 P. 251]; *People* v. *Martin,* 13 Cal.App. 96 [108 P. 1034]). ■ Thus, assuming, without conceding, that at the time defendant first picked up the knife, he reasonably believed he was in mortal danger, the immediate danger ceased after Hicks had been stabbed and defendant emerged from the laundry room in pursuit of the unarmed Mason.

Defendant contends that his continued possession of the weapon did not obviate the defense because his excited condition implied unconsciousness. There was no evidence of unconsciousness and admittedly no instruction submitted on that defense (Pen. Code, § 26, subd. 5). (*People* v. *Klor,* 32 Cal.2d 658, 661-662 [197 P.2d 705].) The record shows that the court repeatedly and correctly instructed the jury that defendant must have possession of the weapon *"knowingly"* and also correctly defined the word *"knowingly."* The fact that he may have been "overwrought" during his pursuit of Mason is no defense. We conclude that the trial court's refusal of the two proffered instructions concerning self-defense, compulsion and coercion, was not error under the circumstances of this case.

Finally, defendant contends that the court likewise erred in excluding evidence of threats against his life made by Hicks and Mason to other inmates on several occasions before the fight in the laundry room on January 24, as these threats were relevant to defendant's state of mind when he picked up the knife. But as we have noted above, his state of mind was not an issue here. The record indicates that the trial court excluded the threats against defendant made by Hicks and Mason to other inmates because the charge was neither assault nor homicide. The threats were hearsay and, therefore, properly excluded (*People* v. *Steely, supra; People* v. *Wells,* 261 Cal.App.2d 468, 479 [68 Cal.Rptr. 400]; *People* v. *Purta,* 259 Cal.App.2d 71, 73-74 [66 Cal.Rptr. 38]). Furthermore, the record indicates that defendant himself testified that Hicks, Mason and Howard had repeatedly threatened him before January 24, and there was considerable other evidence of hostility between defendant, Hicks and Mason. Accordingly, the evidence would at best have been cumulative. We conclude that it was properly excluded and defendant was not prejudiced thereby.

The appeal from the order denying motion for a new trial is dismissed.

The judgment is affirmed.

Shoemaker, P. J., and David, J. pro tem.,* concurred.

A petition for a rehearing was denied January 16, 1970, and appellant's petition for a hearing by the Supreme Court was denied February 13, 1970.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.