Filed 3/8/13  P. v. Butler CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>KAREN BUTLER,<br><br>  Defendant and Appellant. | F063819<br><br>(Super. Ct. No. MCR040734)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Suzanne M. Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari L. Ricci, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Wiseman, Acting P.J., Levy, J. and Cornell, J.

A jury convicted appellant, Karen Butler of possessing a weapon while confined in a penal institution (Pen. Code, § 4502, subd. (a)).[1] In a separate proceeding, the court found true an allegation that Butler had a prior conviction within the meaning of the "Three Strikes" law (§ 667, subds. (b)-(i)).

On November 4, 2011, the court sentenced Butler to a four-year term (the mitigated term of two years doubled because of Butler's prior strike conviction), which it imposed consecutive to the term Butler was serving when she committed the possession offense.

On appeal, Butler contends: 1) the court committed instructional error; and 2) she was denied the effective assistance of counsel. We affirm.

### FACTS

On the evening of February 14, 2011, Correctional Officer Alicia Benafield was conducting a count at Valley State Prison for Women when she saw Butler standing at the window of the door to her cell. Butler asked to speak with "the sergeant." Benafield told her that as soon as she completed the count she would call the sergeant and tell him Butler would like to speak with him. She also told Butler to go sit down on her bunk. All the other inmates in Butler's cell were on their bunks at the time. Benafield continued down the hall taking the count and did not hear anything from Butler's cell. Approximately two minutes later when she was at the cell across from Butler's cell, Benafield saw Butler at the window of her cell door swinging an object in a white sock. She also heard Butler say, "I'm going to hit you bitches." Benafield pressed an alarm which alerted other staff that an inmate might be in possession of a weapon. She ordered Butler to get on the ground and drop the weapon and Butler complied. Benafield recovered the weapon, which turned out to be a slug made from a lock inside a sock.

---

[1] All further statutory references are to the Penal Code.

During the time that Benafield observed Butler, the other inmates in her cell were on their bunks.

Correctional Sergeant John Alvara spoke with Butler after the disturbance in her cell. Butler told him if they put her back in the same cell she would do something so that they would have to take her out of the cell again.

Butler was also examined by a nurse after she was removed from her cell. The nurse found a small bruise on Butler's upper right arm and two small scratches on her back. When asked to make a brief statement about the incident in her cell, Butler stated she wanted to hurt her cellmates.

Butler testified that she had been in the cell where the incident occurred less than two weeks. Seven other women were assigned to the cell including three women she described as bullies. These three women would speak in Spanish and would call Butler names. On February 14, 2011, just before 9:00 p.m., Butler got into an argument over a table with the shortest woman of the trio of bullies. When Butler and the short woman were about to fight, the largest woman of the trio told Butler, "You hit her, you are going to have to hit me." The third woman then told Butler that if Butler hit her girlfriend, she was going to join the fight too. At some point the large woman pushed Butler causing her to bump her left shoulder into a locker, which created a small bruise on the shoulder. The short woman then attempted to swing at Butler and wound up scratching her. Meanwhile the third woman stated, "You guys, that's how you want to do it, let's do it this way." Butler felt intimidated and scared so she went to her bed area and got the lock.

According to Butler, throughout the course of the day the three women had been threatening her and calling her names. However, Butler did not report this to any officer because she did not want to be known as a "snitch" as this would have put her in more danger.

After she was pushed into the locker, Butler went to the door to her cell and started kicking it to get an officer's attention. Three minutes later when Benafield came

to the door, Butler told her she needed to get Butler out of the cell, she was having problems, and she needed to see a sergeant. Benafield told her she could not do it then because it was almost time for the count and she would take care of it afterwards.

Butler then went to her bed area, took the lock off her drawer and put it in a sock because the three bullies were cussing at her in Spanish. However, she did not swing the lock or attempt to strike the women with it. Instead, since she knew Benafield would be across the hall, Butler placed the lock on her cell door window so that it would make a clank sound and get her attention. As expected, Benafield was in the hall across from Butler's cell and heard the sound. The officer turned toward Butler and told her to put that weapon down. Butler was afraid of the three women and replied, "Get me out of this room. I'm not playing with you, Miss Benafield. I need to get out this room and see the sergeant." Butler also said she was going to hit the three women. Benafield told Butler to get down in the prone position and she complied.

According to Butler when Benafield walked two cells down the hall the three bullies were standing up and they sat down when she came back to the window. Throughout this incident the three bullies were saying threatening things to her and at one point Butler told them, "I [*sic*] going to hit all you bitches." Butler was afraid the three bullies were going to beat her up and all she wanted to do was get out of the cell. She also knew that if the officers saw the lock in the sock they would take her out of the cell. Butler admitted telling Sergeant Alvara that if they put her back in the cell she would do something again so that they would have to take her out. She told the nurse she would hurt the three women before they hurt her.

## DISCUSSION

### *The Alleged Instructional Error*

Butler contends the court erred by its failure to charge the jury sua sponte with an instruction on self-defense. We disagree.

A trial court has a sua sponte duty to instruct regarding a defense if there is substantial evidence to support it and the defense is consistent with the defendant's theory of the case. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.)

In *People v. Saavedra* (2007) 156 Cal.App.4th 561 the court held that the defense of self-defense is available in very limited circumstances to an inmate charged with illegally possessing a weapon in prison. (*Id*. at p. 569.) In so holding, the court explained:

> "… It is well established that a prison inmate charged with a violation of section 4502 cannot raise the defense of self-defense based on a claim that a weapon was possessed for protection from an anticipated, future attack. (*People v. Crenshaw* (1946) 74 Cal.App.2d 26, 29-30; *People v. Velasquez* (1984) 158 Cal.App.3d 418, 420.) However, the courts have recognized in dicta that it may be permissible for an inmate to raise a narrow claim of self-defense when the inmate was 'confronted with an emergency that ... justified his seizing one of the prohibited weapons in order to protect himself.' (*People v. Crenshaw*, *supra*, 74 Cal.App.2d at p. 30, italics [omitted]; see *People v. Evans* (1969) 2 Cal.App.3d 877, 881-882, disapproved on other grounds in *People v. King* (1978) 22 Cal.3d 12, 25; *People v. Steely* (1968) 266 Cal.App.2d 591, 595-596; *People v. Purta* (1968) 259 Cal.App.2d 71, 74; *People v. Velasquez*, *supra*, 158 Cal.App.3d at pp. 420-421.) As stated by the *Velasquez* court, 'self-defense might justify violation of the statute *where the prisoner was under imminent mortal attack, had no opportunity to seek protection of the authorities*, and temporarily seized a prohibited weapon *in order to save his life*.' (*Velasquez*, *supra*, at pp. 420-421.)
>
> "A rule precluding reliance on self-defense when an inmate arms himself or herself in anticipation of an attack is consistent with the general principle that self-defense operates as a defense only when the threat of bodily harm is immediate and present; fear of harm even in the near future is insufficient. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.) Further, a concomitant rule allowing an inmate to raise self-defense when he or she temporarily seizes a weapon as a protective measure in response to an emergency is consistent with the established rule that a convicted felon charged with possession of a firearm may raise self-defense if the firearm only became available during an emergency and was possessed temporarily in response to the emergency and there was no other means of avoiding the danger. (*People v. King*, *supra*, 22 Cal.3d at p. 24; see § 12021, subd. (h)(1)(A), (B) [convicted felon's possession of firearm

5.

justifiable if convicted felon 'found the firearm or took the firearm from a person who was committing a crime against him or her' and 'possessed the firearm no longer than was necessary to deliver or transport the firearm to a law enforcement agency'].)

"We conclude that allowance of a narrow self-defense claim *as suggested in cases such as Crenshaw and Velasquez* represents a correct balancing of the policy concern that prison inmates be strictly forbidden from possessing weapons [citation], and the firmly established principle that a person acting in self-defense is not criminally culpable [citation]." (*People v. Saavedra, supra,* 156 Cal.App.4th at pp. 568-569, fn. omitted, italics added.)

Here, while the three women were allegedly poised to attack Butler, Benafield came to Butler's cell while counting the inmates and two to three minutes later she was at the cell directly across from Butler's cell. However, on neither occasion did Butler advise Benafield that she had been assaulted by the three women earlier that day, that the women were threatening her, or that she feared she was in imminent danger of being assaulted. The first time Butler simply asked Benafield to allow her to speak with a sergeant. Further, although the second time Butler asked to be removed from her cell, she did not explain why. Instead, she armed herself with a makeshift weapon and made sure Benafield saw it in order to ensure that she was removed from her cell. Thus, even assuming Butler was "'under imminent mortal attack'" (*People v. Saavedra, supra,* 156 Cal.App.4th at p. 568) when she made a weapon out of the lock and sock, she was not entitled to assert a defense of self-defense because she had the opportunity to seek the protection of prison authorities in lieu of arming herself. It follows that the court did not err by its failure to instruct on a defense that Butler was not entitled to assert.

Moreover, Butler did not contend she armed herself with the lock and sock in order to defend herself against the three women. Instead, she unequivocally testified that all she did with the lock and sock was hit it against the cell door in order to get Benafield's attention because she knew that possessing a weapon would get her removed from her cell and away from the three women who assaulted her. Thus we conclude the

court did not have a sua sponte duty to instruct on self-defense for the additional reason that this defense was inconsistent with Butler's theory of the case.

### *The Ineffective Assistance of Counsel Claim*

"Ineffective assistance of counsel occurs when (1) counsel fails to act in a manner expected of reasonably competent counsel *and* (2) it is reasonably probable that a more favorable outcome would have occurred absent the deficient performance.  [Citation.]" (*People v. Mejia* (2012) 211 Cal.App.4th 586, 635.)

Butler contends the evidence supported a claim of self-defense and therefore her defense counsel provided ineffective representation by his failure to advance and develop a theory of self-defense or seek an instruction on that defense.  However, as explained above, the evidence did not support a defense of self-defense because Butler had the opportunity to seek help from prison authorities in lieu of arming herself and the defense was inconsistent with Butler's testimony and the defense theory of the case.  Accordingly, we conclude defense counsel did not provide ineffective representation by his failure to pursue or request an instruction on self-defense.

### DISPOSITION

The judgment is affirmed.