Filed 6/17/13  P. v. Taylor CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>JOE NATHAN TAYLOR,<br><br>      Defendant and Appellant. | C071283<br><br>(Super. Ct. No. 10F05622) |

Defendant Joe Taylor was convicted of possessing a sharpened instrument in a state prison in violation of Penal Code[1] section 4502, subdivision (a).  Before trial, the trial court precluded defendant from offering evidence of a necessity defense.  Also, at trial the court permitted defendant to be shackled in the presence of the jury.  On appeal, defendant contends the trial court erred in:  (1) refusing to allow him to present evidence and refusing to instruct the jury on the necessity defense; and (2) permitting him to be

---

[1]     All further section references are to the Penal Code.  Section 4502, subdivision (a), provides in relevant part that "Every person who, while at or confined in any penal institution . . . possesses or carries upon his or her person . . . any dirk or dagger or sharp instrument . . . is guilty of a felony . . . ."

1

shackled in the presence of the jury.  We disagree with defendant on both points and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant parts of the proceedings will be addressed in their respective sections below; however, we briefly summarize the facts here.  In May 2010, defendant was being held in California State Prison, at Folsom.  At that time, Lucio Cuevas was doing "on-the-job training" as a correctional officer cadet in the prison.

Cuevas came into contact with defendant while assisting other officers in patting down inmates for weapons on their way back from a small exercise area.  While conducting a patdown search of defendant, Officer Cuevas "felt a cylindrical object [of] approximately four to five inches."  After defendant told him the object "was nothing," defendant was handcuffed and placed in a holding cell.

During an unclothed body search, a process that involves "instruct[ing] the inmate to remove all clothing" and inspecting each piece, defendant unrolled the waistband string of his shorts where Cuevas saw a four-to-five-inch-long piece of melted, twisted plastic; it had a handle and its tip was sharpened.

Defendant was charged with possessing a sharpened instrument in a state prison. The jury found him guilty and the court sentenced him to a determinate term of one year in state prison and an additional 25 year to life due to prior strike convictions.  Defendant timely appealed.

DISCUSSION

I

*The Necessity Defense*

Defendant's first argument is that the trial court violated his constitutional right to present a defense when it "refused to allow evidence and refused to instruct the jury on the defense of necessity" because defendant's "offer of proof . . . support[ed] a necessity defense . . . ."  The People disagree.  We conclude that the trial court properly denied

2

defendant's request because as a matter of law the defendant's offer of proof did not support an instruction on the necessity defense.

Before trial, the prosecution moved to exclude all evidence "regarding the reason for the defendant's possession of the weapon." In response, defendant made a motion to admit a defense of necessity. Defendant offered to prove the following facts. A Department of Corrections and Rehabilitations (department) memorandum issued five days before the incident stated since " 'Black and Southern Hispanic inmates pose a significant threat to each other' " those two populations were being segregated. According to defendant, "Southern Hispanics at that time posed a 'significant threat' to all [B]lack inmates." "As a result, the [B]lack and [S]outhern Hispanic inmates were being taken onto the yard alone, with no other inmates present."

That day, several Black inmates saw the sharpened instrument on the ground of the exercise yard. According to defendant, because correctional officers "do not always search the yard after inmates [leave] the [exercise] yard and before another group . . . comes," the instrument would have been accessible to Southern Hispanic and other inmates when they came into the exercise yard. Further, there were several inmates in the exercise yard at that time and an inmate puts himself at serious risk of harm when other inmates see him turn a weapon over to a guard. Defendant picked up the sharpened instrument and put it in his pants, "where he knew it would be found." Thus, defendant argued before trial that because he would have been exposed to severe physical injury had he alerted guards to the presence of the sharpened instrument in front of other inmates, he had no choice but to place the sharpened instrument in his waistband to avert harm to himself and other Black inmates.

The prosecution argued the evidence showed that "[defendant] was not in immediate danger" and offered "merely conjecture about possible future events." Since the memorandum relied upon by defendant stated that Southern Hispanic inmates would not be on the exercise yard until 9:00 a.m. the next day, and the incident happened at

3

11:30 a.m. the day before, the future harm was too speculative to constitute an emergency for the purposes of the necessity defense.

The trial court found that "[a]s a matter of law [defendant] does not fall within th[e] class of persons for whom the necessity defense could possibly apply." The court was correct.

The necessity defense has not been codified, but is recognized as a defense to certain crimes, including some crimes committed by prison inmates. (See *People v. McKinney* (1986) 187 Cal.App.3d 583, 586; see also 1 Wiktin & Epstein, Cal. Criminal Law (4th ed. 2012) Defenses, § 62, p. 501 ["California case law has recognized that the defense of necessity is available under limited circumstances"].) "To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency." (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035.)

"[A] well-established central element [to the defense of necessity] involves the emergency nature of the situation . . . ." (*People v. Patrick* (1981) 126 Cal.App.3d 952, 960.) Indeed, "[t]he necessity defense is very limited and . . . . [i]t excuses criminal conduct if it is justified by a need to avoid an *imminent peril* . . . ." (*People v. Beach* (1987) 194 Cal.App.3d 955, 971, italics added.)

"The standard for evaluating the sufficiency of the evidentiary foundation [for the defense] is whether a reasonable jury, accepting all the evidence as true, could find the defendant's actions justified by necessity. . . . [S]atisfying the required foundational burden through an offer of proof rather than on the witness stand makes no difference to the standard of review on appeal, which is 'whether there is evidence deserving of consideration from which reasonable jurors could conclude the . . . elements [of the

4

necessity defense] have been satisfied.' " (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1539.) Even assuming the jurors would take as true the facts in a defendant's offer of proof, a trial court need not give a necessity instruction where the evidence is insufficient as a matter of law. (See *People v. Slack* (1989) 210 Cal.App.3d 937, 943-944.)

Defendant suggests that the emergency situation, or imminent threat, that required him to pick up the sharpened instrument was the possibility that a Southern Hispanic inmate would come into possession of the sharpened instrument and use it to severely injure him or another Black inmate. Defendant's argument is without merit.

According to our Supreme Court in *People v. Purta* (1968) 259 Cal.App.2d 71, 74, "a prisoner might be justified in seizing [a] prohibited weapon[] in order to protect himself if he were confronted with an emergency situation and his life were endangered." Since *Purta*, our courts have elaborated on the propriety of an instruction on the necessity defense when an inmate possesses a sharpened instrument in a secured facility. (See, e.g., *People v. Velasquez* (1984) 158 Cal.App.3d 418 [finding the necessity defense inapplicable to a charge that defendant was in possession of a deadly weapon in a county jail]; *People v. McKinney*, *supra*, 187 Cal.App.3d at p. 583 [reaching the same conclusion for assault with a deadly weapon in a prison]; *People v. Saavedra* (2007) 156 Cal.App.4th 561 [noting in dicta that the necessity defense was applicable to a charge of being in possession of a weapon in prison].)

*Velasquez* is instructive here. The *Velasquez* court rejected a necessity defense for possessing a sharpened instrument in a jail where the defendant was found by an officer in the Los Angeles County jail "making a knife from the railing of his bed . . . ." (*People v. Velasquez*, *supra*, 158 Cal.App.3d at pp. 419-422.) The defendant claimed that he had told the officer that four men had assaulted him earlier, but the officer told him to go back to his cell. (*Id.* at p. 420.)

While the defendant in *Velasquez* was charged under section 4574,[2] the court discussed the history of both sections 4574 and 4502. (*People v. Velasquez*, *supra*, 158 Cal.App.3d at p. 420.) "The purpose of these statutes is to protect inmates and officers from assaults with dangerous weapons perpetrated by armed prisoners. . . . The purpose of the statutes would be frustrated if prisoners were allowed to arm themselves in proclaimed or actual fear of anticipated attack by other inmates. Accordingly, it is well-established that arming for self-defense against a future anticipated attack is no defense to the crime." (*Ibid.*) While the *Velasquez* court recognized that "self-defense might justify violation of the statute where the prisoner was under imminent mortal attack, had no opportunity to seek protection of the authorities, and temporarily seized a prohibited weapon in order to save his life," the court concluded that was not the case before it because "[the defendant] was not under attack when found in possession of the deadly weapon." (*Id.* at p. 421.)

The reasoning in *Velasquez* applies with equal force here. The imminent threat defendant claims he was trying to avoid by picking up the sharpened instrument was the possibility that a Southern Hispanic inmate would pick up the sharpened instrument in the exercise yard and use it against defendant or another Black inmate. Because, however, the Southern Hispanic inmates would not be in the exercise yard until the next day at 9:00 a.m., the *earliest* a Southern Hispanic could have used the weapon against defendant or another Black inmate was sometime the next day. This hypothetical future threat posed by a Southern Hispanic inmate using the sharpened instrument was too

---

[2]      Section 4574, subdivision (a), provides in relevant part as follows: "any person who, while lawfully confined in a jail or county road camp possesses therein any firearm, deadly weapon, explosive, tear gas or tear gas weapon, is guilty of a felony and punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years."

remote as a matter of law to support a necessity defense. (See *People v. Velasquez*, *supra*, 158 Cal.App.3d at p. 420.)

Defendant tries to analogize this case to *People v. Saavedra*, *supra*, 156 Cal.App.4th at page 561. *Saavedra*, however, is distinguishable. In *Saavedra*, after the defendant was attacked by two other inmates, he was found to be in possession of a sharpened instrument. (*Id.* at pp. 565-566.) In upholding the trial court's failure to instruct on *duress*, the court noted in *dicta* that "the facts supported a necessity defense based on the theory that Saavedra seized the weapon to prevent a more aggravated attack against him, which outweighed the harm sought to be prevented by forbidding prison inmates from possessing weapons." (*Id*. at p. 567.) *Saavedra*, however, involved evidence of an imminent threat to the inmate's life without time to notify the authorities. (See *ibid.*; *People v. Velasquez*, *supra*, 158 Cal.App.3d at pp. 420-421.) This case is inapposite because neither defendant, nor anyone else, was being attacked when defendant picked up the sharpened instrument.

Finally, defendant argues it is "not the trial court's function to pass upon the merits of a proposed defense," nevertheless a trial court does not err in rejecting a necessity instruction where the evidence is insufficient as a matter of law. (See *People v. Slack*, *supra*, 210 Cal.App.3d at pp. 943-944.) Accordingly, we find that the trial court properly refused to instruct the jury and admit evidence on the necessity defense.

## II

### *Defendant Shackled In Front Of The Jury*

Defendant's second argument is that the trial court abused its discretion in permitting him to be shackled in the presence of the jury. According to defendant, because "the attempted showing of manifest need fell woefully short of what is necessary to visibly restrain a defendant in front of his jury," and "because it cannot be said beyond a reasonable doubt that the outcome of the trial would have been different" in the absence of shackles, defendant's conviction must be reversed. We disagree.

7

Prior to trial, the trial court conducted a security hearing. The court explained that "generally [a] defendant cannot be physically restrained in a courtroom in the jury's presence except upon a showing of manifest need," and what the standard was for manifest need. After the court explained that standard, Michael Perry, a sergeant with the department testified.

Sergeant Perry suggested that because defendant was faced with an increased prison sentence, he might pose extra security risks in the trial court. Defendant was already sentenced to a term of 25 years to life and if convicted for this violation stood to face "an additional consecutive 25 [years] to life sentence."

Officer Perry also discussed department policy which "dictates that all high-risk inmates shall be restrained with a waist chain with cuffs attached and leg restraints at all times . . . . [¶] unless [a judge] . . . order[s] [otherwise]." Inmates are deemed high-security risks by a placement score. Normally "[a]n in mate is designated as a level four or maximum security [inmate] when their placement score reaches 52 points." Defendant, however, had a "level four or maximum security inmate . . . score of 126 points" primarily as a result of his "disciplinary history."

Officer Perry disclosed the following disciplinary history: "February 2010, producing of dangerous contraband. Found guilty. [¶] February 2007, possession of alcohol. Finding Guilty. [¶] January 2006, battery on a peace officer. Finding guilty. [¶] August, 2004, mutual combat. Finding Guilty. [¶] December, 2003, obstructing a peace officer in the performance of his duties. Finding Guilty. [¶] November 2002, inciting others to force and violence. Finding guilty." As a result, Officer Perry believed that "[defendant] possesse[d] a significant threat to the safety of the proceedings based on his convictions and his in prison behavior."

Defendant's counsel argued that because "the last incident of alleged violence by [defendant]" took place in "January of 2006, six years ago," and the charge here is not an "incident of violence . . . it's highly prejudicial to have him restrained in front of the

8

jury." Moreover, counsel noted, that the 2006 incident only involved defendant's shoulder hitting a correctional officer.

In response, Officer Perry again cited the department's procedures and stated that the department believed defendant needed to be physically restrained during trial because of his past prison history. The trial court countered that "Of course you know the law says the policy alone doesn't suffice, it has to be based on acts."

The trial court ruled that restraints were appropriate, stating as follows: "I find that there's sufficient demonstrated need for the restraints in this case. Significant in my mind is that the defendant is currently a state prisoner and is facing significant charges. His past history does not give me confidence that some disruption is not possible. I can't say how likely it would be." Although defendant had behaved in court so far, "given the nature of [defendant's] charges[,] . . . the circumstances of this trial, the Court's evidentiary rulings which I'm sure frustrate him, I'm sure [he] will not [be] in a better frame of mind."

We review the trial court's decision to permit defendant to be shackled in the presence of the jury for abuse of discretion. (See *People v. Hernandez* (2011) 51 Cal.4th 733, 741.)

"[V]isible physical restraints like handcuffs or leg irons may erode the presumption of innocence because they suggest to the jury that the defendant is a dangerous person who must be separated from the rest of the community." (*People v. Hernandez*, *supra*, 51 Cal.4th at p. 742.) As a result, a trial court must decide whether there is a particularized, manifest need for the physical restraints on a case-by-case basis. (See *People v. Duran* (1976) 16 Cal.3d 282, 290-291; see also *Deck v. Missouri* (2005) 544 U.S. 622, 629 [161 L.Ed.2d 953, 963] ["[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial"].)

9

In making this determination the trial court's assessment is not restricted to the defendant's courtroom behavior, but the court may base its decision on a " 'showing of unruliness, an announced intention to escape, or "[e]vidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained. . . ." ' " (*People v. Hill* (1998) 17 Cal.4th 800, 841.) "[W]hen the imposition of restraints is to be based upon conduct of the defendant that occurred outside the presence of the court, sufficient evidence of that conduct must be presented on the record so that the court may make its own determination of the nature and seriousness of the conduct and whether there is a manifest need for such restraints; the court may not simply rely upon the judgment of law enforcement or court security officers or the unsubstantiated comments of others." (*People v. Mar* (2002) 28 Cal.4th 1201, 1221.) A "trial court may not delegate to law enforcement personnel the decision whether to shackle a defendant." (*People v. Seaton* (2001) 26 Cal.4th 598, 651.)

Relying on *People v. Miller* (2009) 175 Cal.App.4th 1109, 1114, defendant argues that " 'the mere fact that [he wa]s a prison inmate, standing alone, does not justify the use of physical restraints.' " Defendant's reliance on *Miller* is unavailing. While the *Miller* court was correct that a " 'court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record' " (*People v. Miller*, *supra*, 175 Cal.App.4th at p. 1114), here the trial court took evidence from Officer Perry and explained why it was allowing physical restraints.

Further, defendant relies on *People v. Ervine* (2009) 47 Cal.4th 745 to argue that the trial court abused its discretion because "after noting [defendant's] minor rules infractions in prison and good behavior in court . . . . [it ordered] [defendant] shackled based upon facts which did not rise to the level of those which would legally allow for shackling in front of a jury." Defendant's reliance on *Ervine*, however, is equally unpersuasive.

10

In *Ervine,* the trial court conducted a hearing after it admittedly erred in allowing the inmate to be restrained in the presence of the jury and found that after "review[ing] [the] defendant's criminal history, which contained only some instances of resisting an officer in 'the rather distant past' and two 'relatively slight' jail disciplinary violations . . . [there existed] no basis to continue using the belly chain and ordered it removed." (*People v. Ervine*, *supra*, 47 Cal.4th at pp. 771-773.) However, on appeal, the People conceded that "the trial court erred in delegating to the sheriff's department the decision whether to shackle defendant and in allowing defendant to be shackled during a portion of voir dire without a showing of manifest necessity." (*Id.* at p. 773.) Defendant misconstrues *Ervine* because the court there did not hold that a temporally remote instance of resisting an officer and two slight prison rules violations was insufficient to justify a manifest need for physical restraints in every situation.

In conclusion, the trial court here held a hearing and elicited evidence from the department as to defendant's behavior while he was incarcerated and invited the opinions of defense counsel. The trial court made an independent determination as opposed to relying on the department's general policy of physically restraining high-risk inmates. Specifically, the record shows that the trial court: (1) the took testimony from the department; (2) stated the legal standard for manifest need; (3) explained that the law says merely relying on a general policy of physical restraints for inmates is not appropriate; and (4) gave reasons as to why the circumstances justified a manifest need for physical restraints.

Further, defendant conveniently ignores the evidence of his out-of-court behavior presented at the security hearing. Officer Perry testified that from 2002 to 2006, defendant had six reported rules violations while incarcerated, including: (1) battery on a police officer; (2) obstructing a police officer; and (3) engaging in mutual combat. Moreover, defendant also ignores the fact that he was facing the prospect of an additional concurrent 25-years-to-life sentence. Given the evidence of the three incidences of

11

violent, nonconforming conduct while he was incarcerated, we cannot say the trial court abused its discretion -- i.e., acted outside the bounds of reason  (see *People v. Catlin* (2001) 26 Cal.4th 81, 122) -- in finding there was a manifest need.  The trial court did not err in permitting defendant to be physically restrained in the presence of the jury.

DISPOSITION

The judgment is affirmed.


                                          ROBIE        , J.



We concur:



      NICHOLSON     , Acting P. J.



      HULL      , J.


12