Filed 7/17/25  P. v. Souzer CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IKE NICHOLAS SOUZER,<br><br>    Defendant and Appellant. | G063419<br><br>(Super. Ct. No. 22ZF0010)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge. Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J.

Hilton and Steven Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

After a shank was found in Ike Nicholas Souzer's jail cell, he was charged with the manufacture and possession of a weapon while in custody. A jury found him guilty as charged, and he was sentenced to one year in county jail, followed by two years of mandatory supervision.

Souzer appealed. He contends he was denied his right to present the affirmative defense of legal necessity when the trial court: (1) precluded two expert witnesses who would have testified in support of his necessity defense, and (2) refused to instruct the jury on necessity as a defense to the charges. As discussed below, we find no error and affirm.

STATEMENT OF THE CASE

Souzer was charged with possession of a weapon in custody (Pen. Code, §4502, subd. (a) count 1),[1] and manufacturing a weapon in custody (§ 4502, subd. (b); count 2). Six aggravating factors also were alleged.

Before trial, the district attorney moved to exclude any expert witness whose opinion concerned issues unrelated to the charged crimes. Specifically, the district attorney noted he had received a report from a Dr. Reiter, in which the doctor "speculate[d]" as to why Souzer possibly felt compelled to possess the shank, and referenced Souzer's mental health history and past custodial history. The district attorney argued such expert testimony was irrelevant to the charged crimes, which are general intent crimes, and was likely to confuse the jury. Souzer requested the court take

---

[1] All further statutory references are to the Penal Code, unless stated otherwise.

2

judicial notice of his juvenile case history, and argued the court should instruct on the necessity defense if the evidence could support that defense. At the hearing on the motions in limine, the trial court stated that necessity may be a defense in the case, but declined to allow mental health expert testimony until the defense showed substantial evidence supporting that defense.

During the trial, the defense asked the trial court to permit Souzer to introduce the reports of Dr. Reiter and Dr. Kaser-Boyd to support his necessity defense. The trial court excluded the testimony of both experts under Evidence Code section 352, as involving "an undue consumption of time, confus[ing] the issues, and mislead[ing] the jury, and [because] they do not support the defenses being sought."

During the conference on jury instructions, defense counsel sought an instruction on legal necessity. The trial court found Souzer had not shown substantial evidence supported application of the necessity defense.

On October 17, 2023, a jury found Souzer guilty as charged. In a bifurcated proceeding, the trial court found true two aggravating factors.

The trial court sentenced Souzer to the midterm of three years on count 1, split into one year in county jail, followed by two years of mandatory supervision. It imposed and stayed the midterm of two years on count 2.

STATEMENT OF THE FACTS

Deputy Sheriff Treadwell testified that on July 9, 2022, he participated in a search of Souzer's jail cell. During the search, Treadwell found a shank. Subsequently, Treadwell interviewed Souzer. After Treadwell advised him of his *Miranda*[2] rights, Souzer agreed to speak with the deputy.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

3

Treadwell asked Souzer why he had a piece of plastic in his cell, and he responded, "I don't know. I get bored." Treadwell noted that it appeared to be a shank, and Souzer replied, "It's not a shank." When Treadwell asked why one end was sharpened, Souzer stated, "How do you know it's not for protection?" Souzer, however, did not recount any threats to his safety. Treadwell testified that during his time supervising Souzer's jail area, he never learned of any information indicating Souzer was or would be the target of an attack or assault by other inmates.

Souzer testified in his own defense. He was in juvenile hall from age 13 to age 18. Before arriving at juvenile hall, he was diagnosed with high-functioning autism, ADHD, OCD, and PTSD. He is a curious person who likes to take things apart and put them together. Souzer testified he had been involved in fights at juvenile hall. Sometimes he was attacked, and other times he was the aggressor or retaliating. He escaped from juvenile hall in April 2019, but was captured and returned. In August 2021, he had a fight with a juvenile corrections officer who had been making disparaging comments all day. Later, while he was trying to shower, he shut the shower door hard, which was taken as a sign of aggression. Several corrections officers responded by "assault[ing]" him. Souzer later pleaded guilty to three misdemeanor charges of assaulting the officers.

Eight days after the incidents involving the officers, Souzer turned 18 years old. Later that same month, the juvenile court granted his request to be transferred to Orange County Men's Jail. The court informed him that he could return to juvenile hall at any time.

After arriving at the jail, Souzer was asked to "do something that I wouldn't do," and felt scared. He submitted two requests to be transferred from general housing, but received no response until his request to be put

4

into protective custody was granted. Souzer, however, learned that protective custody was no different from being in the general population. Thus, he requested to return to juvenile hall.

In April 2022, while still housed at the jail, Souzer was released from custody in his juvenile case. He was placed on a GPS ankle monitor and ordered to go to a halfway house. After being taken to the halfway house, he cut off his ankle monitor and walked away. He was arrested a few days later and sent back to jail, where he requested to go into protective isolation custody.

Over the next few months, Souzer made multiple requests to return to juvenile hall. He recounted several incidents which resulted in him feeling his safety was "compromised" at the jail. There was an incident where he complained to jail staff about not receiving the correct sized t-shirt, and the person (trustee) charged with distributing the t-shirts threatened him. There was another incident where a deputy responded to Souzer's complaints by suggesting the deputy would create a situation where other inmates would have access to Souzer's jail cell. Souzer also was threatened a few times by another inmate, although he did not take the threats seriously. Souzer admitted he never reported the threats.

Souzer testified about the circumstances relating to his manufacture and possession of the shank. Someone passed by his cell and left a written message instructing him to make a weapon for another inmate. Believing he had no choice, Souzer made a shank from the plastic food tray. He placed the shank in a paper bag, which he handed to the inmate when he passed by the inmate's cell. However, about 30 minutes later, the same inmate passed him a note telling him to take back the shank, which Souzer did. Souzer thought he made an inadequate weapon. He became more

stressed and went multiple nights without sleeping. He felt his safety was in jeopardy, which was "why I held onto the object." He could not remember how long he had possession of the shank, but it was more than one day.

After the shank was discovered, in October 2022, Souzer was allowed to return to juvenile hall.

DISCUSSION

I.

APPLICABLE LAW

A defendant has a constitutional right to a meaningful opportunity to present a complete defense. (*Crane v. Kentucky* (1986) 476 U.S. 683, 690.) However, as a general rule, the application of well-established rules of evidence does not impermissibly infringe on an accused's right to present a defense. (See *Holmes v. South Carolina* (2006) 547 U.S. 319, 326–327 ["While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"]; *Taylor v. Illinois* (1988) 484 U.S. 400, 410 ["The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"].)

Similarly, a trial court must instruct the jury on all general principles of law relevant to the issues raised by the evidence, including defenses on which the defendant relies and that are not inconsistent with the defendant's theory of the case. (*People v. Anderson* (2011) 51 Cal.4th 989, 996.) However, "[a] trial court is required to give a requested instruction on a

6

defense only if substantial evidence supports the defense." (*People v. Panah* (2005) 35 Cal.4th 395, 484.) Evidence is "[s]ubstantial" for this purpose if it is "sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

Here, Souzer sought an instruction on the affirmative defense of legal necessity. "Except as to crimes that include lack of necessity (or good cause) as an element, necessity is an affirmative defense recognized based on public policy considerations. [Citations.] To justify an instruction on the defense of necessity, a defendant must present evidence sufficient to establish that she violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which she did not substantially contribute to the emergency." (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1134–1135.)

"The defense of necessity is 'founded upon public policy and provides a justification distinct from the elements required to prove the crime. [Citation.] The situation presented to the defendant must be of an emergency nature, threatening physical harm, and lacking an alternative, legal course of action. [Citation.] The defense involves a determination that the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged. [Citation.] Necessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime. [Citations.] [¶] An important factor of the necessity defense involves the

7

balancing of the harm to be avoided as opposed to the costs of the criminal conduct. [Citation.] Unlike duress, the threatened harm is in the immediate future, which contemplates the defendant having time to balance alternative courses of conduct. [Citation.] The defendant has the time, however limited, to form the general intent required for the crime, although under some outside pressure. [Citation.] Thus, the defense does not negate the intent element, and the defendant has the burden of proving the defense by a preponderance of the evidence.'" (*In re Eichorn* (1998) 69 Cal.App.4th 382, 389.)

We independently review claims of instructional error and constitutional error. (*People v. Nelson* (2016) 1 Cal.5th 513, 538 [instructional error]; *People v. Cromer* (2001) 24 Cal.4th 889, 894 [constitutional error].) We review the trial court's decision to admit or exclude evidence under the deferential abuse of discretion standard. (*People Vieira* (2005) 35 Cal.4th 264, 292.)

## II.

### DISCUSSION

Souzer has not shown there is evidence in the record that, if believed, could persuade a reasonable jury to find the affirmative defense of legal necessity would apply in this case. Specifically, Souzer has not shown (1) he violated the law to prevent a significant and imminent evil, and (2) there was no reasonable legal alternative. Deputy Treadwell testified he was aware of no threats against Souzer. Although Souzer testified to his general fear for his safety, he did not testify about any specific threat of imminent danger. Moreover, Souzer manufactured the shank when he was ordered by another inmate to make a weapon, rather than making the shank in response to a specific threat of danger. He kept possession of the shank weapon for fear

8

of punishment for failing to make an adequate weapon, but never testified he received an actual threat of punishment.

Additionally, Souzer did not report any threats to the jail staff or the juvenile court. His requests to be returned to juvenile hall were not accompanied by any reference to threats to his safety. The fact that Souzer was not immediately returned to juvenile hall after his repeated requests does not show there were no reasonable legal alternative besides manufacturing and possessing a shank. He did not present evidence there was no other method for the jail staff to protect his safety while he was in jail.

Finally, public policy does not support giving a necessity instruction. As the appellate court in *People v. Velasquez* (1984) 158 Cal.App.3d 418, explained when rejecting a necessity defense to possession of a weapon in jail: "The very existence of the weapons inevitably invites their use on other inmates and correctional officers. That is why our statutes prohibiting such possession by prisoners have always been construed to be absolute, and to permit no defense based on a claim of protection against future attack." (*Id.* at p. 422.) Likewise, "[a]s a matter of public policy, self-help by lawbreaking and violence cannot be countenanced where the alleged danger is merely speculative and the lawbreaker has made no attempt to enlist law enforcement on his side." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267–268.) Here, Souzer's subjective belief there was an imminent threat is too speculative to justify an instruction that would permit an inmate to manufacture and possess a weapon in custody. Accordingly, the trial court properly refused to instruct the jury on the affirmative defense of legal necessity.

The trial court also properly exclude the testimony of Dr. Reitner and Dr. Kaser-Boyd. Their testimony was proffered to support the legal necessity defense. However, their testimony could not show there was an imminent threat to Souzer or that he had no reasonable legal alternative to protect himself other than manufacturing and possessing a shank. Thus, their testimony was not relevant, and the trial court did not abuse its discretion in excluding it.

DISPOSITION

The judgment is affirmed.


DELANEY, J.


WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

10