[No. H032249. Sixth Dist. July 15, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS MILLER, Defendant and Appellant.

**COUNSEL**

William M. Robinson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and David M. Baskind, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PREMO, J.**—A jury convicted defendant Thomas Miller of assault with a deadly weapon by a person serving a life term (count 1) and attempted murder (count 2). On appeal, defendant contends that (1) the evidence as to count 1 was insufficient because no evidence supported that defendant was serving a life term, (2) the trial court erred by shackling his legs during trial over objection, and (3) the abstract of judgment incorrectly records a $10,000 restitution fine rather than the pronounced $200 restitution fine. The People concede that the evidence was insufficient as to count 1. And the parties agree that double jeopardy principles bar a retrial of that count except for the lesser offense of assault with a deadly weapon. We agree with defendant that his shackling constituted prejudicial error. We therefore reverse the judgment, remand for retrial, and direct retrial on count 1 to be limited to the charge of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1). Because reversal is required, we need not, and do not, reach the abstract-of-judgment issue.

## GENERAL BACKGROUND

While watching inmates at the Salinas Valley State Prison playing handball in the prison yard, California's Department of Corrections and Rehabilitation Sergeant Gary Jordan saw defendant striking another inmate while on the

ground and on top of the inmate. He used his radio to order the observation officer to "put the yard down," prison parlance for signaling all inmates in the yard to assume a prone position on the ground. All inmates complied with the signal except defendant and his victim. Defendant continued to strike his victim. When Sergeant Jordan approached the two, defendant turned, threw a knife over the wall, and kicked the victim in the head. Defendant had stabbed the victim 26 times causing a stroke from blood loss, coma, and paralysis. The victim testified that he was first stabbed in the neck from behind and did not see his assailant. But he continued that he afterward saw defendant stab him twice.

Defendant presented a misidentification defense via inmates who testified to witnessing a fistfight without weapons. He conceded that he found a knife wrapped in cloth on the ground and threw it over the wall. But he argued that no fingerprints linked him to the knife and, while the victim's blood was on the cloth, no blood existed on the blade. He theorized that multiple fights were occurring at the same time and someone else had stabbed the victim.

## SHACKLING BACKGROUND

The record reveals that, outside the presence of the jury, defendant moved that he "not be shackled." The trial court then asked, "As far as the Department of Corrections?" After the bailiff replied, "We can release one hand," the trial court told defendant that he could "go ahead and voir dire the jury with respect to the shackling." The trial court later instructed the jury in the language of CALJIC No. 1.04 as follows: "The fact that physical restraints have been placed on the defendant must not be considered by you for any purpose. They are not evidence of guilt and must not be considered by you as evidence that he is more likely to be guilty than not guilty. You must not speculate about the restraints being used. In determining the issues in this case, disregard that matter entirely."

## DISCUSSION

The parties agree on the law governing the use of physical restraints at criminal trials. "[A] defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." (*People v. Duran* (1976) 16 Cal.3d 282, 290–291 [127 Cal.Rptr. 618, 545 P.2d 1322] (*Duran*); see also

Pen. Code, § 688 ["No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."].) " 'Manifest need' arises only upon a showing of unruliness, an announced intention to escape, or '[e]vidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained . . . .' " (*People v. Cox* (1991) 53 Cal.3d 618, 651 [280 Cal.Rptr. 692, 809 P.2d 351] (*Cox*), quoting *Duran, supra,* at p. 292, fn. 11.) Thus, the mere fact that the defendant is a prison inmate, standing alone, does not justify the use of physical restraints. "[T]he trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record." (*Duran, supra,* at p. 293.) And the decision whether to shackle a defendant may not be delegated to security or law enforcement personnel; the trial court must make its own determination regarding restraints. (*People v. Hill* (1998) 17 Cal.4th 800, 841 [72 Cal.Rptr.2d 656, 952 P.2d 673].) "Moreover, '[t]he showing of nonconforming behavior . . . must appear as a matter of record . . . . The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion.' " (*Cox, supra,* at p. 651, quoting *Duran, supra,* at p. 291.) The burden is on the People to establish in the record the manifest need for the shackling. (*People v. Prado* (1977) 67 Cal.App.3d 267, 275 [136 Cal.Rptr. 521].)

██ The People concede that the trial court abused its discretion by denying defendant's motion to be unshackled. We agree that the concession is appropriate given that the record does not show defendant's violence, threat of violence, or other nonconforming conduct.

The People argue, however, that the trial court's error was harmless because there is no affirmative evidence in the record that the shackling burdened defendant, the jury knew defendant was a prison inmate and could have reasoned that he was shackled because he was a felon rather than violent or dangerous, the trial court admonished the jury to disregard the restraints, and the evidence of guilt was overwhelming. (*People v. Anderson* (2001) 25 Cal.4th 543, 596 [106 Cal.Rptr.2d 575, 22 P.3d 347] [reversal is warranted only on a showing "that physical restraints impaired the fairness of defendant's trial and thus caused prejudice"].) We disagree given the circumstances of this case.

■ The California Supreme Court has stated that it has "consistently found any unjustified or unadmonished shackling harmless where there was no evidence it was seen by the jury." (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 583–584 [15 Cal.Rptr.2d 382, 842 P.2d 1142].) "Even a jury's brief observations of physical restraints generally have been found nonprejudicial." (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1213 [120 Cal.Rptr.2d 477, 47 P.3d 262].)

Here, there is no affirmative evidence that the jury saw defendant's restraints. But it is reasonable to infer that the jury saw them. This follows because the trial court instructed the jury to disregard them. "Such an advisement is given only when shackles are visible."[1] (*People v. McDaniel, supra*, 159 Cal.App.4th at p. 744 (*McDaniel*).)

■ The California Supreme Court has not determined which harmless error standard applies when a court abuses its discretion by permitting a defendant to be shackled in a manner visible to the jury and without manifest need in violation of *Duran, supra*, 16 Cal.3d at page 291. But in *McDaniel*, we held that when a trial court abuses its discretion by permitting a defendant to be shackled without a manifest need for such restraints and in a manner visible to the jury, such shackling error is error of federal constitutional dimension that compels reversal of the judgment unless the state demonstrates beyond a reasonable doubt under the *Chapman* (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]) harmless error standard that the shackling did not contribute to the verdict. (*McDaniel, supra*, 159 Cal.App.4th at p. 742.)

In answering whether the judicial error committed in this case was harmless beyond a reasonable doubt, the critical factors we consider are the impact on defendant's ability to participate at trial and the potential for juror prejudice. (*People v. Anderson, supra*, 25 Cal.4th at p. 596.) Applying those two factors here, we cannot say that the trial court's error was harmless beyond a reasonable doubt.

---

[1] "The Use Note for CALJIC No. 1.04 states, 'If the defendant has been restrained, but the restraints are concealed from the juror's view, do not give this instruction, unless requested by the defendant. If the restraints are in the view of the jury, the court has a sua sponte duty to instruct the jury that the restraints have no bearing on the determination of the defendant's guilt. [Citations.]' (Use Note to CALJIC No. 1.04 (Fall 2006 ed.) p. 13.)" (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 744, fn. 8 [71 Cal.Rptr.3d 845].) The People pose that defendant might have asked the trial court to give CALJIC No. 1.04 though the restraints were concealed from view. But the point is pure speculation. Nothing in the record supports that defendant requested the instruction. And it is unreasonable to infer that defendant would call attention to invisible restraints by requesting CALJIC No. 1.04.

 First, although defendant does not argue that the shackles and prison garb affected his decision not to testify, "Even when the jury is not aware that the defendant has been compelled to wear [a restraint]"—there, a stun belt—its presence "may preoccupy the defendant's thoughts, make it more difficult for the defendant to focus his or her entire attention on the substance of the court proceedings, and affect his or her demeanor before the jury—especially while on the witness stand." (*People v. Mar* (2002) 28 Cal.4th 1201, 1219 [124 Cal.Rptr.2d 161, 52 P.3d 95].) That observation reinforces these similar statements in the court's 1998 decision in *People v. Hill, supra,* 17 Cal.4th at page 846: "Although the record does not disclose the jury ever saw or heard the chains restraining defendant, the use of such restraints (assuming for argument they were unjustified) raises other possibilities of prejudice. Shackles may affect a defendant's mental state during trial. . . . Shackles may also impair a defendant's ability to cooperate or communicate with counsel. [Citations.] The pain and 'consequential burden placed on the body and mind of the defendant' [citation] must also be considered." *Hill,* in turn, reinforces the high court's pronouncements in *Duran,* where the court described the long common law history holding "that the prisoner should be unshackled in the courtroom so as to have ' "use of his reason, and all advantages, to clear his innocence." ' " (*Duran, supra,* 16 Cal.3d at p. 288.) "Recognizing these common law pronouncements," the *Duran* court said, "we held over 100 years ago in *People* v. *Harrington* (1871) 42 Cal. 165, that 'any order or action of the Court which, without evident necessity, imposes physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense; and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf.' " (*Ibid.*)

 Second, although the jury inevitably would learn that defendant was a prison inmate, that fact does not erase the visual, psychological, and emotional impact of seeing a defendant shackled or negate the natural tendency to wonder and perhaps worry about why shackles are necessary and whether defendant is a violent and dangerous criminal. "[I]t is not the fact that the defendant is a prison inmate that makes shackling prejudicial; rather, it is the jurors' visual, psychological, and emotional response to seeing a defendant so physically restrained and differentiated from everyone else and the natural tendency to wonder whether the defendant is a violent and dangerous person, and worry about safety. As the majority in *Deck* [*v. Missouri* (2005) 544 U.S.

622, 630 [161 L.Ed.2d 953, 125 S.Ct. 2007]] noted, the negative distraction caused by seeing a shackled defendant undermines the presumption of innocence and the fairness of the factfinding process." (*McDaniel, supra*, 159 Cal.App.4th at p. 746.)

Third, although the trial court instructed the jury to disregard defendant's shackles, and, as a general rule, we may presume that jurors can follow such an admonition (see *People v. Davenport* (1995) 11 Cal.4th 1171, 1210 [47 Cal.Rptr.2d 800, 906 P.2d 1068]), "if reviewing courts automatically find that an admonition and presumption that jurors follow it cure the failure to make a determination that shackling is necessary, trial courts could shackle prison inmates as a matter of routine, knowing that a subsequent admonition and appellate presumption would in most cases render any abuse of discretion harmless. . . . [Thus,] a blanket application of the presumption could, as an unintended consequence, undermine the trial court's sua sponte obligation to make a determination on the record that shackling is reasonably necessary" (*McDaniel, supra*, 159 Cal.App.4th at p. 747, fn. 9).

Finally, the case against defendant was far from open and shut. Though defendant's four inmate witnesses were less than impeccable, defendant did have a defense. And the nonvictim witnesses did not see defendant use the knife when striking the victim. Moreover, as to count 2, the jury acquitted defendant of the greater charge of premeditated attempted murder, which suggests that defendant's fistfight scenario might have had some credence.

We therefore cannot say with assurance—beyond a reasonable doubt—that the restraints placed on defendant had no prejudicial effect on his ability to participate at trial or the jury's perception of him.

■ The California Supreme Court has consistently denounced the imposition of unnecessary restraints on a defendant during trial. The practice is condemned because of "possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant." (*Duran, supra*, 16 Cal.3d at p. 290.) We join our high court in denouncing unnecessary shackling as an "affront to human dignity," which can foment "disrespect for the entire judicial system." (*Ibid.*) And we heartily endorse statements by both the California Supreme Court and the United States Supreme Court that physical restraints should be used only as a last resort. (*Ibid.*, citing *Illinois v. Allen* (1970) 397 U.S. 337, 344 [25 L.Ed.2d 353, 90 S.Ct. 1057].)

## DISPOSITION

The judgment is reversed. The case is remanded for retrial. Retrial as to count 1 is limited to the charge of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1).

Rushing, P. J., and Elia, J., concurred.