Filed 3/30/15  P. v. Glynn CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# **COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL PHILLIP GLYNN,<br><br>        Defendant and Appellant. | C073872<br><br>(Super. Ct. No. CRF124773) |

A jury found defendant Michael Phillip Glynn stole whiskey from a store on three occasions in November and December 2012.  Defendant appeals following conviction of second degree burglary and three counts of petty theft with prior petty theft convictions. (Pen. Code, §§ 459, 484, subd. (a), 488, 666; undesignated statutory references are to the Penal Code.)  He contends the trial court (1) abused its discretion in ruling his prior convictions admissible for impeachment (though he did not testify), and (2) erred in

1

instructing the jury on flight. Defendant also claims ineffective assistance of counsel in trial counsel's failure to object to (a) a store security guard's opinion testimony that defendant was the person depicted in surveillance videos that had been lost before the third theft, and (b) defendant's wearing restraints in view of the jury. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2012, at 3:50 p.m., Nugget Market loss prevention officer, Kristopher Brockmeyer, was monitoring security cameras and observed a male customer, later identified as defendant, take an $84 whiskey bottle from a shelf. Defendant moved to aisle three and, with his back to the camera, moved his hands to his front and adjusted something. From that point on, the bottle was no longer visible. The guard left his office and followed defendant as he moved through the store. Defendant paid for a soda and left. The guard followed.

Three store clerks were waiting outside, having been alerted by the guard. The guard, dressed in plain clothes, stopped defendant by briefly touching his wrist. The guard identified himself as store security and displayed his badge. The guard told defendant this was about the bottle defendant had shoved down his pants and asked him to come back inside the store. Defendant moved toward the store but then shortened his steps, looking left and right. Observing this behavior, Brockmeyer told defendant to put his hands behind his back to be handcuffed. Defendant instead kept walking, a couple of steps past the store entrance. The guard grabbed him. Defendant pulled away, swinging his elbows, and moved toward the patio area that led to the street. The guard and clerks took defendant to the ground. Defendant continued to resist. They cuffed him, removed the bottle from his waistband, and brought him back inside the store.

The jury viewed surveillance videos of the December 9th incident, from inside and outside the store.

2

The security guard's attention had been drawn to defendant in the store on December 9, 2012, because the guard recognized defendant from security videos the guard had reviewed on two occasions in November 2012 to investigate missing bottles of the same whiskey. After the December 9th incident, the guard looked for the November videos, but they were gone from the computer. They were therefore not available for trial. However, a still photograph made from one of the videos was introduced into evidence.

At trial, the guard gave his opinion that the person depicted in the photograph and the two missing videos was defendant. The guard testified the November 15th video showed that at 6:45 p.m., a male took a bottle of the whiskey, went to aisle three, slipped the bottle in his back pocket, selected a soda, paid for the soda, and left the store. The November 18th video showed two males enter the store around 7:40 p.m. One appeared to be wearing the same dark clothing shown in the November 15th video. He took a bottle of the whiskey, moved to aisle three, and concealed the bottle in the front of his sweater. He and his companion each bought a soda and left. On both occasions in November, the sales receipt system did not show any payment for the whiskey. The store did not pursue the November thefts at that time because the suspect was unidentified. The guard testified he later recognized that defendant was the one who took the whiskey in both November videos. Defendant was charged in this prosecution with the two November thefts, as well as the December theft.

Defendant did not testify.

The jury found defendant guilty of one count of burglary and three counts of petty theft with prior theft conviction allegations -- the priors being a 1997 receipt of stolen property (§ 496), 1997 grand theft (§ 487), 2006 unauthorized use of automobile (Veh. Code, § 10851), and 2011 receipt of stolen property (§ 496). In a bifurcated proceeding, the jury found true the prior prison term allegations for 2009 felon in possession of a

3

firearm (§ 12021), 2006 unauthorized use of automobile (Veh. Code, § 10851), and 2003 forgery in Arizona (Ariz. Rev. Stats., § 13-2002).

On May 1, 2013, the trial court sentenced defendant to a total of eight years in prison -- the three-year upper term for the December burglary (Count One); a three-year term stayed under section 654 for the December theft (Count Two); two consecutive eight-month terms for petty theft with prior petty theft convictions for the November thefts (Counts Three and Four); three years for the prior prison term enhancements (§ 667.5, subd. (b)); and an eight-month term on a different case (No. 110726) of receiving stolen property, for which defendant had been on probation when he committed the current crimes.

DISCUSSION

I

*Impeachment Evidence*

Defendant claims the trial court abused its discretion in permitting the use of his nine prior convictions for impeachment. We need not address the contention, because defendant did not testify at trial and, as he acknowledges on appeal, we are bound by *People v. Collins* (1986) 42 Cal.3d 378, which adopted the rule set forth in *Luce v. United States* (1984) 469 U.S. 38 [83 L.Ed.2d 443], that a defendant must testify at trial in order to raise on appeal a claim of improper impeachment with a prior conviction. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Defendant states he raises the issue here in order to preserve it for federal review.

II

*Security Guard's Testimony About Surveillance Video*

Defendant argues his trial counsel rendered ineffective assistance by failing to object to the security guard testifying to his opinion that defendant was the person

4

depicted in the unavailable November surveillance videos and in the photo from the November 15th video.  We disagree.

To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard  of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692 [80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)  "Because we accord great deference to trial counsel's tactical decisions, counsel's failure to object rarely provides a basis for finding incompetence of counsel." (*People v. Lewis* (2001) 25 Cal.4th 610, 661.)  Such claims are rejected on direct appeal if the record does not affirmatively show why counsel failed to object or that there could be no valid reason not to object.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Before trial, defense counsel sought to set aside the November charges due to lack of sufficient evidence.  The trial court denied the motion but observed there may be a problem in that the videotapes were unavailable.  At trial, defense counsel did not seek to exclude the guard's testimony about the November videos.  Defense counsel argued to the jury that there was no evidence, just accusation, as to the November charges.

On appeal, defendant fails to show trial counsel's performance was deficient.  He argues there is no valid reason not to object to inadmissible evidence.  However, the reason not to object is that the evidence *was* admissible.

A lay witness must have personal knowledge of a matter in order to testify about the matter.  (Evid. Code, § 702.)  A lay witness may give an opinion in limited circumstances.  "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:  [¶]  (a) Rationally based on the perception of the witness; and  [¶]  (b) Helpful to a clear understanding of his testimony."  (Evid. Code, § 800.)

Defendant contends lay opinion testimony of identity based on a photograph or video is admissible *only* where the witness has personal knowledge of the defendant's appearance *at or before* the time the video was recorded, and the testimony aids the jury, e.g., the video is unclear or the defendant has since altered his appearance. We disagree. Defendant's cited cases, in which the witness was familiar with the defendant at or before the time of the recording, do not mandate a rule of general application making prior knowledge a prerequisite for admissibility. Rather, the question is whether the witness's opinion was sufficiently based upon personal knowledge and helpful to the jury so as to permit its introduction.

Defendant cites our opinion in *People v. Perry* (1976) 60 Cal.App.3d 608 (*Perry*). There, during investigation of robbery of a business, a police officer saw a photograph taken from the surveillance "film" and, from the officer's prior contacts, recognized the defendant as the robber. At trial, the film was shown to several witnesses, and the officer and the defendant's parole agent gave their opinion that it depicted the defendant. (*Id*. at pp. 611-612.) We upheld the lay opinion identifications. We rejected the defendant's advocacy for a rule limiting identification testimony to percipient witnesses. (*Id*. at p. 612.) Lay opinion testimony on the question of identity is permitted but is limited to opinion founded on personal perception. (*Id*. at p. 613.) "The witnesses each predicated their identification opinion upon their prior contacts with defendant, their awareness of his physical characteristics on the day of the robbery, and their perception of the film taken of the events. Evidence was introduced that defendant, prior to trial, altered his appearance by shaving his moustache. The witnesses were able to apply their knowledge of his prior appearance to the subject in the film. Such perception and knowledge was not available directly to the jury. The opinions of the witnesses were sufficiently based upon personal knowledge to permit their introduction; the question of the degree of knowledge goes to the weight rather than to the admissibility of the opinion. [Citation.]" (*Id*. at p. 613.)

6

We rejected the defendant's argument that the lay opinion improperly invaded the province of the trier of fact. (*Perry, supra*, 60 Cal.App.3d at p. 613.) We analogized to admissibility of lay opinion identification of handwriting in conjunction with comparisons made by the trier of fact. The Legislature has provided for identification of handwriting by witnesses having personal knowledge, as well as permitting the trier of fact to draw its conclusion from personal comparisons without outside assistance. (*Id*. at p. 614, citing Evid. Code, § 1416.) "The same rationale . . . applies to . . . the identity of a pictorially depicted subject when such evidence is based upon personal knowledge of the person's physical characteristics at the time of the film depiction. The testimony does not invade the province of the trier of fact, but rather is submitted as an aid in the determination of the ultimate question of the identity of the culprit and the defendant's guilt or innocence." (*Perry, supra*, 60 Cal.App.3d at pp. 614-615.)

*Perry* was applied in *People v. Mixon* (1982) 129 Cal.App.3d 118 (*Mixon*). There, two police officers testified that, in connection with investigation of robbery of a gas station, they saw an unclear surveillance photograph of the robbery and, from their prior contacts with the defendant, identified him as one of the robbers, though the defendant had shortened his sideburns and grown a moustache by the time of trial. The Fifth District upheld the conviction. The *Mixon* court construed *Perry* as requiring, as a predicate for the admissibility of lay opinion testimony as to the identity of persons depicted in surveillance photographs, that the witness testify from personal knowledge of the defendant's appearance *at or before* the time the photo was taken. (*Mixon, supra*, 129 Cal.App.3d at p. 128.) *Mixon* added that federal cases have expressed another concern where the lay identification testimony comes from law enforcement officials; that such testimony will increase the possibility of prejudice to the defendant in that he is presented as a person subject to a certain degree of police scrutiny. (*Id*. at p. 129.) "In view of [the officers' testimony that both had had numerous prior contacts with the defendant], it is clear that the[y] . . . possessed requisite personal knowledge of [the

defendant's] appearance. . . . [The defendant] had shortened his sideburns and grown a moustache between arrest and trial." (*Mixon, supra*, 129 Cal.App.3d at pp. 129-131.)

Defendant also cites *People v. Ingle* (1986) 178 Cal.App.3d 505 (*Ingle*), which cites *Mixon* and *Perry* for the proposition that lay opinion is admissible where the witness has personal knowledge of the defendant *at or before* the time the photo was taken, and the witness had knowledge of the defendant from seeing him when the crime was committed. (*Ingle, supra*, 178 Cal.App.3d at p. 513.) *Ingle* involved robbery of a liquor store. The trial court allowed the store clerk -- who had been forced at gunpoint to hand over the money -- to give opinion testimony that the defendant was the robber depicted in a poor-quality surveillance video of the crime. The issue on appeal was whether the witness's viewing of the videotape before identifying the defendant from a photo lineup violated due process. (*Id.* at pp. 511-512.) Thus, *Ingle* has no bearing on our case.

None of the foregoing cases compel exclusion of lay opinion where it is sufficiently based upon personal knowledge acquired three weeks after the images were recorded.

The People rely on *People v. Larkins* (2011) 199 Cal.App.4th 1059, a case involving thefts from health club lockers. The trial court allowed a loss prevention manager to testify he recognized the man depicted in surveillance videos as the defendant because the manager had previously seen the defendant in 20 to 30 other surveillance videos, entering and leaving the health clubs. (*Id.* at p. 1065.) The sequence is not entirely clear. The manager had not seen the defendant in person but at some point had seen the defendant's driver's license and booking photo. (*Id.* at pp. 1065-1067.) Prior videos had been deleted after they led to convictions, but still photographs from the videos had been preserved and were admitted into evidence at the current trial. (*Ibid.*)

On appeal, the *Larkins* defendant argued that case law (*Mixon*) stood for the proposition that lay opinion testimony as to identity of persons depicted in surveillance photographs or video is admissible *only* if the witness testifies from personal knowledge

8

of the defendant's appearance at or before the time the photo or video is taken. (*Larkins, supra*, 199 Cal.App.4th at p. 1066.)

The Fourth District in *Larkins* rejected the contention, explaining *Mixon* did not so hold, and the case it relied on (*Perry*) was distinguishable. (*Larkins, supra*, 199 Cal.App.4th at p. 1066.) "*Perry*'s, and, therefore, *Mixon*'s, insistence on the lay witness being familiar with the defendant prior to or at the time the picture was taken (which was during the crime) is because in each case, the defendant had altered his appearance between the crime and trial. No such alteration occurred here. What we do glean from *Perry*, and, therefore, *Mixon*, is that when law enforcement officers identify subjects of *still photos*, particular attention needs to be paid to the prejudicial impact of their testimony, a matter which is not at issue here because the manager is not a police officer and because defendant here is merely contesting the adequacy of the foundation of the testimony and not its prejudicial impact. The second thing to remember about *Perry* and *Mixon* is that they involved still photos. It is one thing to see a single photo of a person and attempt to identify that person based on it. But, here, the manager saw 20 to 30 videos of defendant, during which time he could observe such distinguishing characteristics as defendant's posture, gait and body movements. Thus, whatever the holdings of *Perry* and *Mixon*, they are logically inapplicable to videos. Finally, *Perry* and *Mixon* correctly point out that the degree of knowledge of the subject by the identifier is a matter of weight, not admissibility. At some point, which the record does not disclose, the manager saw [the] defendant's driver's license and his booking photo [fn. omitted] and, therefore knew the name of the person he was seeing in the videos. It does not matter at what point in his viewing of the videos--either before, during or after-- that he saw what were indisputably photos of defendant, and then could put a name to the images he saw." (*Larkins, supra*, at p. 1067.) *Larkins* added: "Moreover, the jurors were able to test the manager's opinion that defendant was the person in the 20 to 30 videos because they saw still photos taken from some of the videos and they could test

9

his ability to correctly identify defendant in the three videos they were shown." (*Larkins, supra*, at p. 1068.)

Defendant points out the witness in *Larkins* was familiar with the defendant from previous incidents and arrests. (*Larkins, supra*, 199 Cal.App.4th at p. 1066.)

We nevertheless agree with *Larkins*, which is not inconsistent with *Perry*, that the critical question is whether the witness's opinion was sufficiently based upon personal knowledge to permit its introduction. In this case, it was. The guard had personal knowledge of defendant's appearance -- as well as his posture, gait and body movements -- soon after the November 2012 videos, because the guard interacted with defendant in person when the guard caught defendant in the act of committing the December 2012 theft. Defendant had not altered his appearance for trial, other than to get a haircut and "clean[] up a little bit." No purpose is to be served by requiring that the witness be familiar with defendant before or at the time the November videos were recorded. The testimony was also helpful since the videos were unavailable. The jurors were able to test the guard's opinion that defendant was the person in the November videos because the jurors saw a still photograph taken from one of the November videos, and they could test the guard's ability to identify defendant correctly in the December video they were shown.

Defendant does not acknowledge *Larkins* in his opening brief but makes various points in his reply brief. Defendant claims *Larkins* concluded a witness's personal knowledge of a suspect's appearance is relevant only where the suspect's appearance has changed. Defendant thinks *Larkins* got it wrong, because a change in appearance is *not* the basis for requiring personal knowledge in order to offer an opinion as to identity. However, defendant distorts *Larkins*. *Larkins* said that *Perry* and *Mixon* insisted on witness familiarity with the defendant before or during the crime because in those cases the defendant had altered his appearance for trial. (*Larkins, supra*, 199 Cal.App.4th at p. 1067.) Defendant suggests this is wrong, because there was no change of appearance

10

in *Ingle*, which applied *Perry* and *Mixon*. Defendant faults *Larkins* for not discussing *Ingle*. But as we have explained, *Ingle* is inapposite.

According to defendant, *Larkins* (1) held the issue of prejudice arises only where the witness is a law enforcement officer and (2) dealt only with foundation, not prejudice. However, *Larkins* suggested heightened scrutiny of prejudice where the witness is a police officer, but that was not at issue because the loss prevention manager was not a police officer, and the defendant was contesting only the foundation for the testimony, not its prejudicial impact. (*Larkins*, *supra*, 199 Cal.App.4th at pp. 1067-1068.) Defendant argues the opinion of a loss prevention officer, like that of a police officer, has an increased potential for prejudice because it would carry similar weight in the "hearts and minds of the jurors." Defendant cites no supporting authority.

In response to the People's argument that the testimony was helpful to the jury in the absence of the November videos, defendant replies the guard's testimony was not needed since the jurors saw a photograph from one of the November videos and could form their own opinion. However, defendant does not contend there was a viable photograph from the other November video. Moreover, the availability of the one photograph allowed the jurors to test the witness's testimony about the video.

We conclude trial counsel did not render ineffective assistance of counsel by not objecting to the security guard's testimony that the November videos depicted defendant.

### III

### *Physical Restraints At Trial*

Defendant argues trial counsel rendered ineffective assistance by failing to object to the jury seeing defendant chained with jail-issued restraints. The record fails to support his claim.

The record says nothing about restraints, other than the fact the trial court instructed the jury, with defense counsel's concurrence, that "[t]he fact that physical

11

restraints have been placed on the defendant is not evidence. Do not speculate about the reason. You must completely disregard this circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations." Such an advisement is given only when shackles are visible. (*People v. Miller* (2009) 175 Cal.App.4th 1109, 1115.)

However, defendant fails to show that the jury's exposure to him in restraints was anything more than a momentary glimpse during transport to or from court. "Brief glimpses of a defendant in restraints have not been deemed prejudicial." (*People v. Cunningham* (2001) 25 Cal.4th 926, 988.) "Prejudicial error does not occur simply because the defendant 'was seen in shackles for only a brief period either inside or outside the courtroom by one or more jurors or veniremen.' " (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 584.) "The customary practice of utilizing physical restraints while transporting a prisoner from place to place, e.g., from jail to courtroom and back, is a matter of common knowledge and generally acknowledged as acceptable for the protection of both the public and defendant." (*People v. Jacobs* (1989) 210 Cal.App.3d 1135, 1141.)

Defendant argues it is speculation to suppose the restraints were used only for transport. But he forgets it is his burden to show grounds for reversal, which in this appeal requires him to show that trial counsel was deficient in failing to object. Defendant does not meet that burden by merely showing the trial court gave the jury instruction. Moreover, we presume the trial court would have made a record of the need for shackling during trial had the trial court imposed such restraints. (Evid. Code, § 664 [presumption that official duty has been regularly performed]; *People v. Duran* (1976) 16 Cal.3d 282, 291-292 [trial court has duty to make a record of the need for shackling].) The absence of such record is telling.

Defendant fails to show ineffective assistance of counsel regarding physical restraints.

## IV

### *Jury Instruction On Flight*

Defendant maintains the trial court erred in instructing the jury with CALCRIM No. 372: "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself." We see no error.

The instruction is proper where the defendant attempted to leave the crime scene under circumstances suggesting movement motivated by consciousness of guilt and a purpose to avoid being arrested. (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)

In the trial court defendant objected to the instruction, arguing the issue of his resistance to the security guard had been litigated at the preliminary hearing, where defendant was not held to answer on a robbery charge for this incident. The magistrate had concluded the security guard's intent to place handcuffs on defendant was unwarranted. As soon as the guard started using force to place the handcuffs, the guard was acting with excessive force, and defendant had the right to use reasonable force to oppose the guard's force. Deferring to the magistrate's conclusion, the trial court granted defendant's motion to set aside a count charging him with battery for this incident.

The trial court told counsel it would give the flight instruction because the jury could infer from defendant's conduct in "pulling away" from the security guard that defendant wanted "to get the heck out of there."

The record supports the instruction. The evidence that defendant shortened his steps and looked left and right, then walked a couple of steps past the store entrance rather than entering as directed by the guard, and then pulled away from the guard's grip and attempted to move toward the patio exit route after being accused of the crime,

13

support an inference that defendant attempted to flee when confronted by the security guard. That the magistrate and trial court concluded defendant's use of force to resist the guard did not constitute robbery or battery is not inconsistent with a reasonable jury finding defendant used force to resist the guard in an attempt to flee because defendant knew he was guilty of the theft. A flight instruction is warranted even if the jury could attribute a different explanation to the defendant's conduct, so long as the conduct could also support a reasonable inference of an attempt to flee. (*People v. Bonilla, supra*, 41 Cal.4th at p. 328.)

Defendant fails to show grounds for reversal.

DISPOSITION

The judgment is affirmed.


      HULL      , Acting P. J.


We concur:


      MURRAY      , J.


      HOCH      , J.