Filed 3/24/25  P. v. Kleinschmidt CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARLES TRENT KLEINSCHMIDT,<br><br>Defendant and Appellant. | C098141<br><br>(Super. Ct. No. 21FE009928) |

A jury convicted defendant Charles Trent Kleinschmidt of two counts of attempted carjacking, one count of attempted vehicle taking, one count of resisting a police officer, two counts of witness dissuasion, and two counts of violating a court order.  After finding that defendant had two serious felony convictions qualifying as strikes, the trial court sentenced him to 4 consecutive sentences of 25 years to life plus a consecutive term of 42 years consisting of 40 years of enhancements.  The court also denied any presentence conduct credits and imposed a court operations assessment equal to 13 times the per-count amount.

1

Defendant contends there is prejudicial error in the following: (1) the jury instructions; (2) the fact he was handcuffed while the instructions were read; (3) the closing arguments; (4) the imposition of 40 years in sentencing enhancements; (5) the presentence conduct credit denial; and (6) the amount of the court operations assessment. He also challenges his trial counsel's performance, claiming (1) counsel violated his Sixth Amendment rights to effective assistance and to maintain innocence and (2) the trial court failed to conduct a hearing to replace counsel before sentencing.

We find merit in the following arguments that relate to the 40 years of enhancements, the presentence conduct credit denial, and the amount of the court operations assessment. We remand for a hearing on the enhancements and the conduct credits, modify the judgment to reduce the assessment, and otherwise affirm. Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Incidents*

On June 10, 2021, victim I. was waiting outside a boxing gym in her parked car with her daughter when defendant jumped on the hood and started pounding on the windshield. To victim I., it seemed like defendant was fighting someone, but she did not see anyone around. Defendant then entered the car through the passenger side and told victim I. that "someone was following him and that he needed to get out of there." He was agitated, saying "many things that did not make sense," and "clearly saying that someone wanted to kill him." Victim I.'s daughter was panicking, so victim I. "screamed" at her to get out and ask for help. Victim I. tried to push defendant out of the car, but he wouldn't move. Victim I. then quickly got out of the car, and defendant locked himself inside.

A coach from the gym arrived and told defendant he needed to get out. Defendant refused to leave, insisting someone was after him and wanting the coach to drive him

2

somewhere. The coach refused, took the keys out of the ignition, and told defendant to go ahead and stay put so the cops could handle it. After 5 to 10 minutes, defendant got out and started walking toward the gym. The coach grabbed and tossed him to keep him from entering. Defendant stated he would get in even if he needed to break through windows. After the coach verbally resisted defendant's threat, defendant started crossing the street, almost getting hit by multiple cars. The coach described defendant as behaving irrationally and appearing to be under the influence of drugs.

Victim S. was driving on the road in front of the boxing gym with her pit bull in the front seat when defendant jumped in front of her car, slid across to the passenger side, and grabbed the cracked-open passenger window. After the window dropped down, defendant tried to throw the dog out and unlock the car door. Victim S. continued to drive the car for three to four blocks. Defendant told her to "get the fuck out of the car" about five times. He appeared to be disoriented, and victim S. speculated that he could be under the influence of something. Victim S. applied the brakes to get him to let go, but he hung on. She kept going, and he finally let go. Victim S. then watched him climb on top of another occupied car.

Defendant then went to a nearby parking lot, got into an unoccupied car, and started ripping things out. The owner approached defendant and dragged him out of the car. Defendant then jumped through the window of a parked truck, valued at over $950, and tried to take it too, reaching toward the steering column. A crowd of people pulled him away and started beating him up.

Officers arrived and detained defendant in handcuffs. Defendant was "very uncooperative" during the booking process, refusing to sit or move as instructed. At one point, an officer put his hand on defendant's chest to get him to sit down, and defendant "pushed into [the officer]." The officer then put defendant in "max restraints," and defendant resisted. Based on his experience, the officer "believed [defendant] was under the influence of something." Also, defendant had told the officer that "he had smoked a

3

lot of meth." Another officer described defendant as "under the influence of methamphetamine." But neither officer was a drug recognition expert, defendant was not subject to field sobriety tests, and no blood was taken from him to test for methamphetamine.

On September 1, 2021, defendant was served with a criminal protective order prohibiting him from contacting victim I. and victim S (victims). Just over one week later, victims received a text message from defendant through the fiancée of defendant's cellmate. The message asked victims to (1) understand that defendant was "harmless scared and needing help" and "was not trying to hurt people or steal" and (2) "help fix the situation by explaining the truth and being fully honest." The text included the name and phone number of defendant's former defense attorney.

Defendant was charged with eight counts: two counts of attempted carjacking (§§ 215; 664); one count of attempted unlawful taking of a vehicle (§ 664; Veh. Code, § 10851); one count of resisting a police officer (§ 148, subd. (a)); two counts of felony attempting to dissuade a witness (§ 136.1, subd. (a)(2)); and two counts of misdemeanor violations of court orders (§ 166, subd. (c)(1)). The prosecution also alleged defendant had two convictions that qualified as strikes and serious felonies.

## II

### *Jury Instructions*

The court instructed the jury with a single instruction on attempt that addressed both attempted carjacking and attempted vehicle theft. It explained that attempted carjacking or attempted vehicle theft required the following elements: (1) defendant "took a direct but independent step towards committing carjacking and/or vehicle theft" and (2) defendant "intended to commit carjacking and/or vehicle theft." The corresponding written instruction included the identical elements and specified parenthetically which elements applied to which counts. The court read the elements of

4

the target offenses and directed the jury to read the attempt and corresponding target offense instructions together.

As to carjacking, the court set forth the elements and explained that a person "takes something when he or she gains possession of it and moves it some distance." It proceeded to provide the following instructions regarding "possession": (1) "two or more people may possess something at the same time," (2) a person "does not have to actually hold or touch something to possess it," and (3) it is "enough for the person to have control over it or the right to control it either personally or through another person." And the court defined "fear" for purposes of carjacking as "the fear of injury to the person, himself, or injury to the person's family or property or immediate injury to someone else present during the incident or to that person's personal property."

At defense counsel's request, the court gave a simple assault instruction as a lesser included offense of carjacking. It explained that among other elements, assault required proof that "defendant did an act [that] by its nature would directly and probably result in the application of force to a person." It defined the term "application of force" to mean "to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person including through his or her clothing is enough. The touching does not have to cause pain or injury of any kind."

The court then presented instructions on the attempted unlawful vehicle taking charged followed by instructions on the witness dissuasion charges, the resisting a peace officer charge, and the court order violation charges.

III

*Closing Arguments*

The parties agreed that the case came down to defendant's intent. Anticipating defendant would argue he "was not intending to steal vehicles," the prosecutor urged the

5

jury to look at the surrounding circumstances, glean defendant's intent to leave the area and his need for a car, and conclude that he intended to commandeer or take a car.

The prosecutor specifically addressed the attempt counts, explaining (1) the elements for attempted carjacking as "the defendant took a direct but ineffective step towards committing a carjacking, and the defendant intended to commit a carjacking." and (2) the elements for attempted vehicle theft as "the defendant took a direct but ineffective step towards committing a vehicle theft, and the defendant intended to commit a vehicle theft."

Turning to the elements of carjacking, the prosecutor focused on whether defendant had the intent to take a vehicle from the immediate presence of a person. She argued that "taking" an item includes controlling or having the right to control the item either personally or through another person. She gave the example of sitting in your car when a person jumps in and "says drive, drive, drive, and you panic, so you start driving." In that example, she argued that a "person is now controlling the car through you. They're now in possession of your car through you." She argued this is what defendant was trying to do with victim I., urging the jury to reject the view that he was merely looking for help. The prosecutor then addressed victim S. and argued it was very clear defendant was also trying to take her car using force and fear, pointing to defendant's effort to get into the car, unlock the door, and pull the dog out, and his order to victim S. to "get the 'F' out."

Turning to the attempted unlawful vehicle taking charge, the prosecutor argued the issue was whether defendant intended to temporarily or permanently take the truck without the owner's consent. Based on defendant's movements toward the steering column of the truck and his overall goal for the day of taking a car, the prosecutor argued the evidence showed defendant had the requisite intent.

As to all the attempt charges, the prosecutor forecasted that defendant would argue he was "simply . . . under the influence of something." She continued that the evidence

6

supporting that argument amounted to no more than speculation, and whether defendant was under the influence ultimately did not matter because the issue was whether he had the intention to commit the crimes using the required specific intent.

Defense counsel admitted he would not argue certain offenses, such as resisting a police officer and disobeying a court order. But as to the "more serious offenses which require [the] intent to do evil," counsel argued defendant's behavior belied that intent. Specifically, he asked the jury to find defendant not guilty of carjacking, not guilty of dissuading a witness, and not guilty of trying to steal a car.

As to the vehicle counts, defense counsel countered the prosecution's view that the only interpretation of the evidence was that defendant "was trying to steal [a] car," pointing to defendant's apparent paranoia, his effort to find safety in different places, and witness descriptions of him as irrational, delusional, or under the influence.

As to carjacking, defense counsel agreed that defendant entered a car and that such entry would scare a reasonable person "because there [was] a present ability to use force." But he urged the jury to consider the lesser included offense of assault because that offense did not require specific intent, so drug use was irrelevant. While noting he did not recommend that the jury find defendant guilty of assault, he stated, "it's reasonable" and described the fear victims had as an assault. It was not reasonable though, counsel argued, for the jury to infer that the only conclusion from the evidence was that defendant intended to steal a car, again pointing to the other interpretation that defendant was delusional, paranoid, on drugs, and trying to find safety. And he rejected the prosecution's view that defendant attempted to commandeer victims' cars, arguing that defendant didn't try to grab the keys and didn't tell victims to go somewhere.

Turning to the vehicle taking charge, defense counsel argued the jury's choice was to decide whether defendant was trying to hide or trying to steal the truck. Suggesting that the stealing view was unreasonable, he pointed to the fact that defendant had no keys and never tried to drive, but just sat there until he got pulled out.

7

Finally, as to the witness dissuasion charges, defense counsel argued that dissuading occurs "when you try to stop someone from testifying" or when you threaten them if they testify. Here though, according to counsel, defendant apologized and asked victims to tell the truth, which "is the opposite of dissuading."

In rebuttal, the prosecutor pointed to the lack of concrete evidence that defendant was delusional or paranoid. She admitted she "never once said [defendant] was not under the influence of something," and argued her point was that "we don't know what he was under the influence of, if anything." She argued that a person "can be under the influence of something and still have the ability to have intentions." As to witness dissuasion, she asked the jury to read between the lines of the text messages sent to victims and look at the surrounding evidence, arguing that the messages were sent to people who were already terrified of defendant and that defendant was trying to show them he could get to them even from jail.

IV

*Verdict and Sentence*

The jury found defendant guilty of all counts. In a separate bench trial, the court found the allegations true that defendant had been convicted of sexual penetration with a foreign object (§ 289, subd. (a)(1)) in 2006 and forcible oral copulation.

Because those prior convictions qualified as strikes under the "Three Strikes" law, the probation department recommended 25 years to life for each carjacking and witness dissuasion conviction, the middle term of 1 year doubled for the vehicle taking conviction, no time for the resisting conviction, and stayed time for the court order violations. (§ 667, subds. (e)(2)(A)(ii) & (e)(1).) And because the prior convictions were also violent felonies, the department recommended an additional 50 years consisting of 10 years for each carjacking, witness dissuasion, and vehicle taking conviction. (§ 667, subd. (a).) It also listed five aggravating circumstances, three mitigating circumstances,

8

and defendant's seven other prior felony convictions and nine prior misdemeanor convictions between 1996 and 2020.

At the sentencing hearing, the court acknowledged its discretion to strike the prior offenses and expressed its election not to do so in the interest of public safety. In the court's view, defendant had "a long record of violent behavior and it [was] in the interest of public safety that he be incarcerated to protect the public. No amount of supervision [was] likely to deter his violent behavior in the future."

The court sentenced defendant to an aggregate term of 42 years plus a consecutive indeterminate term of 100 years to life consisting of the following: (1) 25 years to life for each of the attempted carjacking and attempted dissuasion counts, (2) 10 years for each of those counts due to the prior serious felony convictions, (3) 2 years for the attempted vehicle taking, and (4) 2 years (stayed under section 654) in county jail for the court order violations. At the time of the sentencing hearing, defendant was 44 years old.

Defendant timely appealed.

## DISCUSSION

### I

### *Jury Instructions*

Defendant asserts five challenges to the jury instructions. He challenges: (A) the consolidated specific intent instruction for attempt; (B) the simple assault instruction; (C) the carjacking instruction; (D) the witness dissuasion instruction; and (E) the absence of certain instructions specific to his defense. As we will explain, we find no merit to these challenges.

A. Consolidated Specific Intent Instruction for Attempt

Defendant contends the trial court erred by consolidating the specific intent instructions for attempted carjacking and attempted vehicle theft in a manner that was reasonably likely to mislead the jury. In his view, a lay juror could reasonably conclude

9

that the specific intent element for carjacking could be proven by the specific intent to commit vehicle theft coupled with a completed assault. We disagree.

The written instruction on attempt, which controls over the oral instruction, properly correlated the elements to each count, specifying that defendant was charged in "Counts 1 and 2 with attempted carjacking" and in "Count 3 with attempted vehicle theft" and that guilt of those crimes required proof that defendant "took a direct but ineffective step toward committing carjacking (Counts 1 and 2) and/or vehicle theft (Count 3)" and "intended to commit carjacking (Counts 1 and 2) and/or vehicle theft (Count 3)." (*People v. Wilson* (2008) 44 Cal.4th 758, 803 [written instructions control].) The identification of the counts as to each element eliminated the potential for the jury to improperly combine the elements. (See *People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1113.) Furthermore, the prosecutor echoed the same correlation (*People v. Young* (2005) 34 Cal.4th 1149, 1202 [must consider closing argument]), and defendant provides no evidence of jury confusion. On this record, we presume the jurors were able to make the required correlations. (*People v. Holt* (1997) 15 Cal.4th 619, 662.)

B.    Simple Assault Instruction

Defendant contends the trial court erred by granting defense counsel's request to provide an instruction on simple assault as a lesser included offense of attempted carjacking. This contention fails under the invited error doctrine.

"[W]hen a lesser included offense instruction is requested by the defense, the invited error doctrine precludes objection to that instruction on appeal." (*People v. Barnard* (1982) 138 Cal.App.3d 400, 409.) In cases involving an action affirmatively taken by defense counsel, courts have found "a clearly implied tactical purpose to be sufficient to invoke the invited error rule." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.) Here, "the inescapable inference from the fact of defendant's request for an instruction on [simple assault] is that . . . counsel's tactical purpose was to place before the jury the option to convict on a less serious charge." (*Barnard*, at p. 410.)

10

Because any error in giving the instruction was invited, defendant's contention is forfeited.

Also, contrary to defendant's position, we disagree that counsel provided constitutionally ineffective assistance by making this request. To establish a claim of ineffective assistance, a defendant must prove that his lawyer's performance was deficient because it fell below an objective standard of reasonableness. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*).) Defendant fails to make that showing. Counsel made a tactical decision to try to avoid a third strike conviction for defendant by putting forth simple assault as a lesser included offense to attempted carjacking. Given the weight of incriminating evidence in the record, we cannot say this decision was incompetent. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1166.)

C.     Carjacking Instruction

Defendant contends the trial court should have defined the term "force" for purposes of carjacking for two reasons: (1) the instructions specified the meaning of "application of force" for purposes of simple assault, making it likely the jury would apply that meaning to carjacking; and (2) defense counsel conceded during closing argument that victims had reason to be fearful for purposes of simple assault, leading to the inference that the force component of carjacking was satisfied. (*People v. Wright* (1996) 52 Cal.App.4th 203, 211.) Counsel never requested a clarifying instruction to this effect at trial, so this contention is forfeited. (*People v. Young, supra*, 34 Cal.4th 1149, 1202.)

Defense counsel's failure to make that request does not amount to ineffective assistance. As stated above, counsel made the reasonable tactical decision to present simple assault as an alternative to attempted carjacking. His closing argument that victims were afraid defendant was "physically going to do something to them" when he entered or tried to enter their cars was consistent with that strategy. Counsel's rational tactical purpose defeats defendant's ineffective assistance of counsel claim. (*People v.*

11

*Arredondo* (2019) 8 Cal.5th 694, 711.) We also discern no prejudice from the lack of clarification, or request for clarification, of the term "force" for purposes of carjacking. (*Cunningham, supra*, 25 Cal.4th at p. 1003 [ineffective assistance claim requires showing of deficient performance and prejudice].) Carjacking can be accomplished through fear or force (*In re Travis W.* (2003) 107 Cal.App.4th 368, 373; see e.g., *People v. Magallanes* (2009) 173 Cal.App.4th 529, 534), and counsel conceded, in accordance with his reasonable strategy, that defendant's action placed victims in fear. There is no reasonable probability that the jury would have reached a different conclusion had it received an instruction specifying the concept of force for purposes of carjacking.

D.      Witness Dissuasion Instruction

Defendant contends the trial court was required to instruct the jury on misdemeanor violations of witness dissuasion as lesser included offenses of the charged felony violations. We disagree that such an instruction was required.

In support of this contention, defendant relies on the following sentence from *People v. Statum* (2002) 28 Cal.4th 682: "[o]ur case law has consistently treated the misdemeanor as a lesser offense than the felony wobbler." (*Id*. at p. 689.) Defendant improperly takes this sentence out of context. In *Statum*, our Supreme Court considered whether a trial court's reduction of a wobbler to a misdemeanor at sentencing constituted an appealable order. (*Id*. at p. 685.) The Court did not suggest that the jury should decide whether a wobbler offense, like the offense at issue here (*People v. McElroy* (2005) 126 Cal.App.4th 874, 880), should be a misdemeanor or a felony. In fact, such an offense "is deemed a felony unless charged as a misdemeanor by the People or reduced to a misdemeanor by the sentencing court under . . . section 17, subdivision (b)." (*Statum*, at p. 685; see *People v. Morse* (1992) 2 Cal.App.4th 620, 647 [rejecting lesser included argument as to wobbler offense].) The potential misdemeanor classification of a wobbler is not a separate lesser included offense of the felony classification.

12

Nor do we find merit in defendant's argument in reply that a sentencing court's discretion to reduce a wobbler to a misdemeanor constitutes factfinding that must be reserved for a jury. In support, defendant relies on *People v. Lynch* (2024) 16 Cal.5th 730, at page 742, for the principle that "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge." This principle is inapposite. The prosecution charged and prosecuted the witness dissuasion offense as a felony, thereby exposing defendant to the felony sentence. The court's discretion under section 17 to decrease that offense to a misdemeanor did not give the court the ability to impose a greater sentence and did not trigger any required jury findings.

E.      Instructions Specific to Defendant's Defense

Defendant contends the trial court committed prejudicial error by failing to instruct the jury on voluntary intoxication and mistake of fact. We conclude any error was harmless.

The trial court properly instructed the jury on the intent required for the charged offenses, and nothing in those instructions precluded the jury from considering voluntary intoxication or mistake of fact. (See *People v. Wharton* (1991) 53 Cal.3d 522, 571-572.) Indeed, the jury was asked to decide those very issues. During closing argument, defense counsel urged the jury to find reasonable doubt of defendant's intent based on the evidence that defendant was under the influence and operating under the mistaken belief that he was in danger. The prosecutor anticipated that issue and argued defendant had the requisite intent even if he was delusional or under the influence. The verdicts show that the jury rejected defendant's version of the events. Given these circumstances, there is no reasonable probability that defendant would have obtained a more favorable outcome had the jury received a voluntary intoxication or mistake of fact instruction. (*Id*. at p. 572.)

Defendant contends the trial court also prejudicially erred by failing to give instructions on duress or necessity. We find no merit to this contention.

13

Instruction on a defense is required only where there is substantial evidence to support each element of the defense. (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1165 [necessity]; *People v. Steele* (1988) 206 Cal.App.3d 703, 707 [duress].) Here, there was no evidence to support at least two elements of the necessity defense, specifically that (1) defendant had an *objectively* reasonable belief that his actions were necessary to prevent a significant and imminent evil and (2) there was no reasonable legal alternative to defendant's actions. (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1135.) As to the duress defense, there was no evidence that defendant acted under a threat or menace accompanied by a direct or implied demand to commit the crime charged. (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 567 [no facts showing an express or implied demand].) For these reasons, the trial court's failure to give necessity or duress instructions was not error, and defense counsel did not render ineffective assistance by failing to request those instructions. (*Id*. at p. 572.)

II

*Defendant's Handcuffing During Jury Instructions*

A.    Additional Background

After over two days of trial, both parties rested. The following Monday morning, the court discussed jury instructions and closing arguments with the parties outside the jury's presence. The court then welcomed the jury and proceeded to read the instructions. After the jury was excused for a 10-minute break, defense counsel stated he "saw a juror staring" at defendant, so he "looked over and realized" defendant was still handcuffed "all through this." The bailiff admitted the handcuffs were an oversight and removed them. Defendant contends this incident violated his right to be free from physical restraints in the jury's presence and necessitates reversal of five of his eight convictions. We disagree.

14

B.     Analysis

Under California law, "a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need." (*People v. Duran* (1976) 16 Cal.3d 282, 290–291; see also *Deck v. Missouri* (2005) 544 U.S. 622, 624 [federal law].)  That said, unjustified restraints are harmless (1) where there is no evidence they were seen by the jury (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 583-584) or (2) when there is nothing in the record suggesting that the restraints impacted the defendant's participation, demeanor, or mental faculties. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1271; *People v. Poore* (2022) 13 Cal.5th 266, 291.)  And "[b]rief glimpses of a defendant in restraints have not been deemed prejudicial." (*Cunningham, supra*, 25 Cal.4th at p. 988.)

Here, defendant relies on defense counsel's remark that he noticed a juror staring at defendant.  But this remark does not establish that the handcuffs were generally visible to either the staring juror or other members of the jury.  "[W]e will not assume this occurred in the absence of affirmative evidence." (*People v. Ward* (2005) 36 Cal.4th 186, 206; see also *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12 [" 'any uncertainty in the record must be resolved against the defendant' "].)  Unlike *People v. Miller* (2009) 175 Cal.App.4th 1109, on which defendant relies, the court did not instruct the jury to disregard the handcuffs, so we have no reason to infer that they were visible. (*Id*. at p. 1115.)  And even if one or more jurors did view the handcuffs, that view was brief in the context of the entire trial.  It occurred after the conclusion of evidence and had no bearing on defendant's choice not to testify, and there is no evidence the handcuffs impaired defendant's mental faculties or demeanor.  We conclude any error regarding the handcuffs was harmless.

## III

### *Closing Arguments*

Defendant contends defense counsel rendered ineffective assistance during closing arguments in two ways: (1) by failing to object to, and eventually adopting, the prosecutor's "inaccurate framing" of the intent elements for attempted carjacking and attempted vehicle taking, and (2) by conceding that defendant committed simple assault. We address each contention in turn.

A.      Intent to Commit Carjacking and Vehicle Taking

Defendant takes issue with the prosecutor's focus on whether defendant had the "intent to steal." He contends counsel rendered ineffective assistance by adopting that "mis-framing" of the required intent. We do not discern reversible error.

Defendant contends that the "intent to steal" is not the same as the "intent to permanently or temporarily deprive the owner of possession," but he does not explain how that difference had any prejudicial effect on this case. (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 564 [defendant must show he suffered prejudice].) "Intent to steal" is the intent to *permanently* take property from the owner (*People v. Riel* (2000) 22 Cal.4th 1153, 1205), while the intent to take property in a carjacking or a vehicle taking can be permanent *or* temporary. (§§ 215, 10851.) To the extent the parties' remarks in closing arguments suggested defendant needed to have the intent to permanently take a car such that the intent to temporarily take a car was insufficient, those remarks imposed a higher standard on the prosecution, not a lesser one as defendant suggests. (*People v. Garcia* (2017) 17 Cal.App.5th 211, 228-229 [error harmless where it favors the defendant].) Moreover, the court's instructions made the required intent clear, and we presume the jury followed those instructions over any contrary closing arguments by the parties. (*People v. Osband* (1996) 13 Cal.4th 622, 717 (*Osband*).)

Defendant also contends the prosecutor's closing argument on carjacking left the jury with four inaccurate understandings of the carjacking and vehicle taking elements.

First, defendant appears to contend that the prosecutor proffered a "burden-reducing argument" by suggesting that the intent to possess a car at the same time as the owner is the same as the intent to deprive the owner of possession. Defendant misrepresents the prosecutor's argument. Courts have made clear that a victim can be deprived of possession of a car for purposes of carjacking not only when the perpetrator physically forces the victim out of the car, but also when the victim remains in the car and the defendant exercises dominion and control over the car by force or fear. (*People v. Gray* (1998) 66 Cal.App.4th 973, 985; see, e.g., *People v. Duran* (2001) 88 Cal.App.4th 1371, 1377.) Consistent with those courts and the jury instruction on carjacking, the prosecutor stated that "[a] person takes something when or she gains possession," that "[t]wo or more people may possess something at the same time," and that a person can possess something by having control over it either personally or through another person. (CALCRIM No. 1650.) We see no error in this argument.

Second, defendant contends the prosecutor's arguments regarding co-possession suggested that the concept applied to vehicle taking. This contention is not supported by the record. The prosecutor's arguments were specifically made in the context of the attempted carjacking charges. The prosecutor separately addressed the attempted vehicle taking charge and made no suggestion that co-possession was possible. And again, the instructions were accurate, and we presume the jury followed them. (*Osband, supra*, 13 Cal.4th at p. 717.)

Third, defendant contends the prosecutor's arguments regarding dominion and control were improper because those arguments apply to the actus reus of completed carjacking, not the mens rea of that crime. We disagree. Attempted carjacking requires the specific intent to deprive the person of possession of the car, and that intent includes the intent to exercise dominion and control over the car. (*People v. Marquez* (2007) 152 Cal.App.4th 1064, 1068; *People v. Gray, supra*, 66 Cal.App.4th at p. 985.) This specific intent is not limited to the completed act.

17

And fourth, defendant contends the prosecutor's focus on whether defendant had the intent to commandeer or take a car for purposes of attempted carjacking improperly suggested that he did not need to intend to do so by way of force or fear. The court accurately instructed the jury on the carjacking elements, including the requirement that defendant's attempt to take a vehicle must have been performed at the time or during the time he used force or fear. Nothing in the prosecutor's argument suggested force or fear were not required, and we presume the jury followed the court's instructions. (*Osband, supra*, 13 Cal.4th at p. 717.)

B.    Assault Concessions

Defendant contends defense counsel's concessions during closing argument regarding simple assault constituted ineffective assistance. We already rejected his related claim that counsel rendered ineffective assistance by requesting an assault instruction. We similarly reject the claim that counsel was constitutionally ineffective by suggesting assault as a reasonable conclusion for the jury to reach. Given the largely undisputed evidence as to defendant's conduct with respect to victims and the serious consequences facing defendant for a third strike conviction, defendant cannot show that counsel's decision was outside the range of reasonableness. (See, e.g., *People v. Freeman* (1994) 8 Cal.4th 450, 498 ["Recognizing the importance of maintaining credibility before the jury, we have repeatedly rejected claims that counsel was ineffective in conceding various degrees of guilt"].)

IV

*Marsden, McCoy, and Sentencing Error*

A.    Additional Background

A few months before trial, defendant requested a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 orally and in writing, asserting that the case was falsified and defense counsel was not communicating with him or doing anything to defend him. After a hearing, the court denied the motion.

At the sentencing hearing held six months later, the trial court began by noting that defendant had "written numerous letters and jail messages to the [c]ourt" (court letters), which the court declined to read due the prohibition on ex parte communication. In the court letters, which were dated between November 2022 and February 2023, defendant denied guilt, claimed he was the one being assaulted on June 10 while having an emergency, and claimed everyone involved in the case was lying, falsifying facts, and concealing evidence. He also claimed he did not receive a fair trial and described counsel as "pure slime." In one of those letters, dated December 15, 2022, he asserted that counsel "did not do anything [he] told him to do."

The prosecutor argued that a number of the court letters showed that defendant "refuse[d] to take accountability for his actions." Interrupting the prosecutor, defendant asserted this was a "falsified case," referred to the "50-page Marsden motion" he filed on defense counsel "to get rid of him before trial," and accused counsel of being involved in "concealing the evidence." The prosecutor then referred to a court letter in which defendant stated he "want[ed] to slap [counsel] right in his face." Defendant interjected again, stating, "He's concealing all the evidence that I'm innocent." Counsel acknowledged defendant's frustration and undesirable behavior and argued the evidence showed he was suffering from drug addiction. Defendant interjected, "No, it indicates that these are liars." Counsel resumed his argument, emphasizing the lack of physical violence in the case and defendant's willingness to take a determinate sentence before trial.

The court then allowed defendant to speak, at which point defendant asserted the following three claims: (1) on June 10, 2021, he was suffering from a medical emergency involving his leg, (2) the witnesses lied at trial regarding what happened that day, and (3) defense counsel was deficient by failing to bring up the medical emergency and expose the lies. The court refused to "relitigate" the case and proceeded to sentence defendant.

19

Based on this background, defendant asserts *McCoy v. Louisiana* (2018) 584 U.S. 414 (*McCoy*), *Marsden*, and sentencing errors. We begin with the *McCoy* and *Marsden* assertions.[1]

B.      Asserted *McCoy* and *Marsden* Errors

Defendant contends he repeatedly tried to assert his innocence, citing his pre-trial request for a *Marsden* hearing and the court letters, and defense counsel failed to follow that objective, violating his right to maintain innocence under *McCoy*. He also contends the trial court committed prejudicial error by sentencing him without holding another *Marsden* hearing. We discern no error under *McCoy* or *Marsden*.

*McCoy* does not apply where the defendant denies guilt but never (1) makes clear a desire to pursue innocence as his defense or (2) voices intransigent objection to counsel's defense strategy. (*People v. Franks* (2019) 35 Cal.App.5th 883, 891.) This standard is fatal to defendant's contention. The record provides no indication that defendant disagreed with counsel's strategy before or during trial. And although defendant claims he "repeatedly tried to *assert* his innocence," he does not claim or cite evidence he expressed a clear desire to *pursue* innocence as his defense. The closest statement defendant made to this effect is that counsel "did not do anything [he] told him to do." But this statement does not clearly reflect a communication to his counsel to pursue innocence as a defense. Furthermore, this statement was made after a verdict was rendered, and there is no error under *McCoy* where a defendant complains about a concession only after trial. (*McCoy, supra*, 584 U.S. at p. 415; *People v. Palmer* (2020) 49 Cal.App.5th 268, 281-282.)

---

[1] *McCoy* "considered 'whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's intransigent and unambiguous objection' and answered that question in the affirmative." (*People v. Bloom* (2022) 12 Cal.5th 1008, 1037.)

Defendant's claim to a *Marsden* hearing before sentencing falls short as well. To trigger such a hearing, there must be "at least some clear indication by defendant that he wants a substitute attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.) "We will not find error on the part of the trial court for failure to conduct a *Marsden* hearing in the absence of evidence that defendant made his desire for appointment of new counsel known to the court." (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484.) No such evidence appears here. Defendant's "diatribes" about the trial and his counsel's tactical decisions in the court letters and at the sentencing hearing did not constitute a *Marsden* motion because those diatribes did not include a request for substitute counsel. (Compare *People v. Clark* (1992) 3 Cal.4th 41, 103 [defendant's statement that he'd " 'object to everything' " his counsel did in the courtroom and that counsel was not representing him did not constitute a *Marsden* motion] with *People v. Armijo* (2017) 10 Cal.App.5th 1171, 1179-1180 [letters clearly indicated the defendant sought the discharge of the public defenders who were representing him and their replacement by another court-appointed counsel].) Complaints regarding the adequacy of representation at trial do not constitute a request for substitute counsel at sentencing or for any other purpose going forward. (*People v. Richardson,* at p. 485.) Contrary to defendant's view, his reference to his earlier *Marsden* motion was not sufficient to trigger a *Marsden* hearing. If anything, that reference indicates that defendant knows how to trigger the *Marsden* inquiry, having done so earlier in the case. (*People v. Johnson* (2018) 6 Cal.5th 541, 573-574.) We discern no *McCoy* or *Marsden* error.

C.    Asserted Sentencing Errors

Defendant challenges two components of his sentence:  (1) the attempted witness dissuasion sentence and (2) the multiple five-year enhancements imposed under section 667, subdivision (a). We address each challenge in turn.

i.     Attempted Witness Dissuasion Sentence

Defendant contents defense counsel provided constitutionally deficient performance by (1) failing to move for a reduction to the misdemeanor version of witness dissuasion at sentencing under section 17 and (2) failing to seek a stay on the sentences for those convictions under section 654.  As we will explain, these contentions fail for lack of prejudice.

Both sections 654 and 17 involve the exercise of court discretion.  (*People v. Clancey* (2013) 56 Cal.4th 562, 579.)  Under section 654, an act punishable by more than one provision of law can be punished by only one provision, and the court has the discretion to impose and execute the sentence of either provision.  (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)  Section 17, subdivision (b) gives the court discretion to reduce a "wobbler" from a felony to a misdemeanor.  (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.)  The relevant criteria in exercising that discretion include " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' "  (*Id.* at p. 978.)  Courts may also consider the sentencing objectives set forth in California Rules of Court, rule 4.410.  (*Alvarez,* at p. 978.)  Those objectives include protecting society, punishing the defendant, deterring crime, encouraging the defendant to lead a law-abiding life, and preventing the defendant from committing new crimes.  (Cal. Rules of Court, rule 4.410(a).)

Here, the record is clear that a motion under section 654 or section 17 would have been futile.  Noting defendant's long criminal record, the court refused to strike his prior convictions and imposed five-year enhancements on four counts for each of those convictions.  Given those decisions, it is unlikely the court would have seen fit to select lower terms for the witness dissuasion convictions.  Defendant's focus on the "relatively benign" nature of the text messages he had sent to victims is improper.  The "current offense cannot be considered in a vacuum." (*Alvarez, supra*, 14 Cal.4th at p. 979.)  Also,

the evidence showed that defendant attempted to influence witness testimony while in custody and in violation of a court order, going to great lengths to convey a message to victims. Defendant also showed a lack of appreciation of his actions and dismissive attitude toward the offenses. This evidence supports a finding that the longer term for the witness dissuasion convictions would protect society. For these reasons, it is not reasonably probable that the court would have chosen a lesser punishment for these convictions.

ii. Five-Year Enhancements

Section 667, subdivision (a)(1) requires a trial court to impose a five-year enhancement for each prior serious felony conviction. Section 1385, subdivision (c)(1) requires the court to dismiss an enhancement "if it is in the furtherance of justice to do so." In exercising section 1385 discretion, the court is required to consider and afford great weight to certain enumerated mitigating circumstances, the presence of which "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of [an] enhancement would endanger public safety." (§ 1385, subd. (c)(2).) The mitigating circumstances include the situation in which "multiple enhancements are alleged in a single case," and "[i]n this instance, all enhancements beyond a single enhancement *shall be dismissed*." (§ 1385, subd. (c)(2)(B) (emphasis added).) Relying on this "shall be dismissed" language, defendant contends the trial court was required to dismiss all but one of his section 667 serious felony enhancements. Defendant is mistaken.

California courts have rejected arguments that the "shall be dismissed" language in section 1385 mandates dismissal. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 239; *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1289-1290; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295-296; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17-18.) We agree with those courts. As the court in *Anderson* explained, "the statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision

that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.)  In other words, the dismissal of the enhancement is conditioned on a court's finding [that] dismissal is in the interest of justice." (*Anderson*, at p. 239.)  The "shall dismiss" statement is also subject to the court's finding regarding public safety.  (§ 1385, subd. (c)(2).)  If the court finds that dismissal would endanger public safety, the trial court is not required to consider the circumstances in favor of dismissal, including the circumstance that there is more than one enhancement. (*Mendoza*, at p. 296.)  In sum, defendant's reliance on that circumstance alone as mandating dismissal lacks merit.

Alternatively, defendant contends the trial court abused its discretion in deciding to impose the five-year enhancements here.  Specifically, he contends the court was unaware of its discretion to dismiss them under section 1385, subdivision (c).  Assuming the court was aware of its discretion, defendant contends (1) the court failed to apply a requisite rebuttable presumption in favor of dismissal and (2) its decision to add enhancements totaling 40 years to his indeterminate sentence was absurd.  We disagree that the court was unaware of its discretion or required to apply a rebuttable presumption, but we find merit in defendant's concern regarding the 40 years of enhancements.

Section 1385, subdivision (c) became effective on January 1, 2022, and defendant's sentencing hearing occurred in 2023.  Because defendant provides no evidence that the trial court was unaware of this law, we assume such awareness.  (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724.)  Also, the view that section 1385, subdivision (c)(2) erects a rebuttable presumption in favor of dismissal has been rejected by the California Supreme Court.  (*People v. Walker* (2024) 16 Cal.5th 1024, 1033.)  We are bound by that decision.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

This leaves us with defendant's remaining contention that the trial court's imposition of 8 five-year enhancements was absurd.  In his view, the addition of 40 years

24

to his indeterminate 100-years-to-life sentence could not be necessary to protect the public from serious danger or physical injury. We see merit in his perspective on this record. The court's sentence was based exclusively on defendant's future threat to public safety. In passing on that issue, a trial court should consider the date the defendant would be released without the enhancement. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228-229; see also *People v. Williams* (2018) 19 Cal.App.5th 1057, 1063.) Here, that date would be well after defendant's natural lifespan, and it is unclear how defendant could continue to be a danger to the public at that point. (See *Williams*, at p. 1063 ["If a defendant's term is still effectively life without parole after resentencing, then resentencing cannot pose an unreasonable risk to public safety"].) For this reason, we remand to the trial court for resentencing on this limited issue. Should the court find dismissal of the enhancements would pose no danger to the public, it must then consider the applicability of the mitigating circumstances enumerated in section 1385, subdivision (c) and whether dismissal of the enhancements would be in furtherance of justice. (*People v. Walker, supra*, 16 Cal.5th at p. 1036.) We express no opinion on how the trial court should exercise its discretion.

V

*Presentence Conduct Credits*

A.     Additional Background

According to the probation report, while defendant was in custody, he received numerous days of restriction in an 18-month period for insubordination, vandalism, entering an unauthorized area, and cursing and making threats toward staff. The report calculated his time in custody and indicated that section 2933.1, subdivision (c) applied to limit his conduct credits to 15 percent.

During sentencing, the trial court noted that defendant was "entitled to 624 days good-time/work-time if he [had] earned it through good behavior" under section 4019. But, after noting defendant's multiple instances of misconduct while incarcerated and his

25

recent threat to slap his attorney, the court credited "zero good-time/work-time." Defendant made no objection.

B.     Analysis

Defendant contends the trial court's impromptu denial of conduct credits violated his right to due process. Anticipating a forfeiture argument, he also contends his trial counsel's failure to object to the denial violated his right to effective assistance of counsel. We exercise our discretion to consider defendant's contention on the merits (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) and conclude remand is required.

Before conduct credits may be denied, "the defendant is entitled to prior notice and an opportunity to (1) rebut the findings of his jail violations, and (2) present any mitigating factors." (*People v. Duesler* (1988) 203 Cal.App.3d 273, 277.) The probation report is an appropriate vehicle for providing notice to a defendant that his conduct credits are at risk by suggesting or recommending withholding credits. (*Ibid.*) A report that merely mentions that defendant had behavioral problems in jail is insufficient to give notice that conduct credits may be denied. (*Ibid.*)

Here, the probation report indicated that defendant had behavioral problems in jail but did not recommend denying conduct credits or give any warning that those credits were in jeopardy, nor did defendant receive any other notice that his conduct credits were at risk. The trial court erred by failing to give defendant an opportunity to prepare and present a defense to the elimination of conduct credits. The People contend this error was nonprejudicial, and an objection would have been futile, "in light of the documented misconduct." But the probation report lacks sufficient detail on the misconduct for us to conclude that giving defendant an opportunity to present a rebuttal and any mitigating factors would be an idle act. Defendant is entitled to a limited remand for this purpose.[2]

_____

[2] We express no opinion on whether the trial court should deny conduct credits, nor do we decide whether section 2933.1, subdivision (c) applies to those credits. Section 2933.1, subdivision (c) limits the maximum conduct credit a person convicted of a

26

## VI

### *Court Operations Assessment*

Section 1465.8 authorizes a court operations assessment of $40 per conviction. The jury convicted defendant of 8 counts, so the trial court should have imposed an assessment of $320 (8 x $40) under section 1465.8 instead of $520.

---

violent felony may earn to 15 percent of the actual period of confinement. Violent felonies are those listed in section 667.5, subdivision (c) and include carjacking. (§ 667.5, subd. (c)(17); but see *People v. Ibarra* (1982) 134 Cal.App.3d 413, 425 [section 667.5 does not apply to attempts to commit the crimes referred to as violent felonies].)

DISPOSITION

The judgment is modified to reduce the court operations assessment from $520 to $320. The case is remanded for the limited purpose of: (1) determining whether to impose the enhancements under section 667, subdivision (a) and section 1385, subdivision (c); and (2) determining defendant's presentence custody credit. The trial court is ordered to prepare an amended abstract of judgment that reflects the $320 court operations assessment, any enhancements imposed, and any credit award and to forward a certified copy of the amended abstract of judgment to the CDCR. In all other respects, the judgment is affirmed.


/s/
MESIWALA, J.


We concur:


/s/
DUARTE, Acting P. J.


/s/
FEINBERG, J.

28